RAUL LLORENTE, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10962–76.    Filed May 13, 1980.

---

*Leonard Bailin,* for the petitioner.
*Lewis R. Mandel* and *Iris K. Rothman,* for the respondent.

STERRETT, *Judge:* By letter dated September 17, 1976, respondent determined a deficiency in petitioner's income taxes for the taxable year ended December 31, 1974, in the amount of $29,403.76. Respondent has also determined additions to tax pursuant to sections 6651(a), 6653(a), and 6654(a), I.R.C. 1954, in the amounts of $7,350.94, $1,470.19, and $940.93, respectively. After concessions, the primary issue remaining is whether petitioner had unreported income evidenced by his mortgage payments and purchase of cocaine in 1974, as determined by respondent utilizing the expenditures method to reconstruct petitioner's income for taxable year 1974. The other issues presented are (1) whether petitioner is liable for the following additions to tax for the taxable year 1974: section 6651(a) failure to file, section 6653(a) negligent underpayment of income tax, and section 6654(a) failure to make estimated tax payments, and (2) whether petitioner is entitled to dependency exemption deductions for two of his sons.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

At the time Raul Llorente (petitioner) filed his petition herein he resided in Jamaica, N.Y. Petitioner did not file a Federal income tax return for calendar year 1974. Petitioner's wife, Cristina Llorente, filed a Federal income tax return for 1974 utilizing the filing status of married filing separately on which she reported gross income of $779. Two of petitioner's children, Carlos and Nestor, were students and lived with their parents during 1974. Petitioner's wife claimed Nestor as a dependent on her 1974 tax return.

Petitioner was born in Colombia, South America, and first came to the United States on February 2, 1965. Upon immigrating to the United States, petitioner brought with him $1,500 in

cash. In August 1972, petitioner had $11,000 in savings of which he used $10,000 for a downpayment on his personal residence.

Petitioner and his wife reported gross income in the amount of $13,020, of which $565 represented interest income, on their joint Federal income tax return for calendar year 1973.

Petitioner's and his wife's cost of living for 1974 was between $900 and $1,000 per month. That amount included the one or two trips made by petitioner to Colombia at a cost of approximately $380 per trip. In January 1974, petitioner purchased the LaPaz Bar and Grill for $9,000 cash.

During 1974 and part of 1975, the New York City Police Department maintained an undercover investigation of illegal narcotics activity. As a result of that investigation, petitioner was arrested on March 8, 1975. At the time of his arrest, petitioner's bail was set at $1 million but was subsequently reduced to $300,000. Petitioner never raised the bail. On April 1, 1975, an indictment was filed in the Supreme Court of the State of New York against petitioner, accusing him of the crime of conspiracy in the first degree to commit the crimes of criminal possession of a controlled substance in the first degree, criminal possession of a controlled substance in the third degree, and criminal sale of a controlled substance in the first degree for the period from February 1974 to March 8, 1975.

On May 24, 1977, petitioner entered a plea of guilty to the crime of attempted conspiracy in the first degree to cover the indictment, and was sentenced on September 6, 1977, to time served, i.e., the time petitioner had spent in jail following his arrest on March 8, 1975, to his sentencing on September 6, 1977.

Hugo Sossa, Alvaro Doronzoro, and Louis Irving Taylor were patrons of petitioner's bar and grill and were known by him. During 1974, a police department undercover agent purchased cocaine and engaged in conversation and other transactions involving the purchase of cocaine with Louis Irving Taylor (Taylor) and Alvaro Doronzoro (Doronzoro) at petitioner's bar and grill. During one such transaction, the undercover agent was informed by Taylor that he would have to check to see if his shipment had arrived. Following that statement to the agent, Taylor left the table at which they were sitting and engaged in a conversation with petitioner. Upon returning, he informed the agent that his shipment had not arrived. On another occasion, the undercover agent entered petitioner's bar and grill to

purchase cocaine from Doronzoro. The agent heard Doronzoro inquire of petitioner whether Doronzoro's shipment of cocaine was available. Further, the agent heard petitioner inform Doronzoro that the shipment had not arrived.

The undercover agent was informed by a confidential informant that petitioner, the informant, and Doronzoro had gone to Alfonso Velasco's house in Queens, N.Y., where there were 6 kilos of cocaine. According to the informant, at that time and location, petitioner examined the package because some of the merchandise had been delivered in a damp condition.

Upon completion of his investigation, the undercover agent advised respondent that petitioner had purchased 6 kilos of cocaine. He further advised respondent that the cost of a kilo of cocaine to petitioner was in the $9,000 to $14,000 range.

Based upon the information received from the undercover agent and a conversation with an assistant district attorney who worked on the criminal case, respondent determined that petitioner expended $54,000 for cocaine in 1974. In 1974, petitioner made payments with respect to a mortgage on his residence in the amount of $3,156. Petitioner, in the same year, received $5,300 as remuneration from Caveman Lounge, Inc. Petitioner was president of Caveman Lounge, Inc., and apparently the corporation was the legal owner of the LaPaz Bar and Grill.

## OPINION

Petitioner argues that respondent's determination that he purchased illegal drugs is arbitrary, that the information used by respondent in reconstructing his income was insufficient to establish the correctness of the deficiency, thereby shifting the burden of going forward with the evidence to respondent. Petitioner argues in the alternative that, if the burden of going forward with the evidence is not shifted, he has met his burden.

Respondent argues that the statutory notice of deficiency is entitled to the ordinary presumption of correctness. Further, he argues that petitioner's testimony, which was the only evidence presented to support petitioner's argument, lacks sufficient credibility to shift the burden of going forward.

A statutory notice ordinarily carries with it a presumption of correctness that, except where provided in the Internal Revenue Code or the Tax Court Rules of Practice and Procedure, places

the burden of proof and the burden of going forward with the evidence on the petitioner. Rule 142, Tax Court Rules of Practice and Procedure, and *Welch v. Helvering*, 290 U.S. 111 (1933). However, a showing by petitioner that the statutory notice is arbitrarily excessive or without foundation has the effect of shifting the burden of going forward with the evidence to respondent. *Helvering v. Taylor*, 293 U.S. 507 (1935). In neither circumstance is such a showing reason for finding the statutory notice null and void.

When petitioner asks the Court to find a statutory notice arbitrary, he is asking the Court to look behind the statutory notice. As a general rule, we will not honor such a request. *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327 (1974). The rare exception to this rule is where respondent, in a case involving unreported income, introduces no direct evidence but rests on the presumption of correctness and petitioner challenges the deficiency on the ground that it is arbitrary. *Jackson v. Commissioner*, 73 T.C. 394 (1979).

Petitioner argues that the instant case meets this exception and is therefore controlled by *Jackson v. Commissioner, supra,* and *Weimerskirch v. Commissioner*, 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977). Respondent argues that *Weimerskirch* is distinguishable.[1] For reasons hereinafter stated, we agree.

In *Weimerskirch*, the Circuit Court for the Ninth Circuit held that the Government must introduce substantive evidence linking the taxpayer with the charged activity. In so holding, the Circuit Court relied heavily upon the Supreme Court decision in *United States v. Janis*, 428 U.S. 433 (1976). In its discussion of the applicability of the exclusionary rule in civil tax cases, the Supreme Court in that case defined a "naked assessment" as "one 'without rational foundation and excessive,' and not properly subject to the usual rule with respect to the burden of proof in tax cases." *United States v. Janis, supra* at 441. The Court did not stop there, but went further and illustrated a "naked assessment" as occurring when the evidence "seized by the Los Angeles police cannot be used in the formulation of the assessment." *United States v. Janis, supra* at 441. The ultimate

---

[1] *Jackson v. Commissioner*, 73 T.C. 394 (1979), was decided by this Court after the parties filed their opening briefs. Respondent's reply brief was filed after our decision in *Jackson* but it does not address itself to the case. Petitioner's reliance on *Jackson* is contained in his reply brief.

holding of the Court was that "the judicially created exclusionary rule should not be extended to forbid the use in the civil proceeding of one sovereign of evidence seized by a criminal law enforcement agent of another sovereign." *United States v. Janis, supra* at 459.

Thus, we must bear in mind that the Supreme Court's reference to a "naked assessment" was in the context of illegally obtained evidence. Therefore, the discussion by the Ninth Circuit of the *Janis* case is not helpful to this petitioner since there is no suggestion here that the statutory notice in issue was predicated on such evidence.

While, as we will emphasize later, we find that the Llorente notice was supported by substantive evidence, we point out that a statutory notice may be based in whole or in part upon inadmissible evidence.[2] See *Weimerskirch v. Commissioner,* 67 T.C. 672, 675 (1977), and cf. *Rosano v. Commissioner,* 46 T.C. 681, 687 (1966).[3] Further, the burden of going forward does not shift if the deficiency is supported by evidence which can be properly introduced, even though respondent had access to evidence which cannot be utilized in the formulation of the deficiency.

The essence of the matter is that petitioner's reliance on our decision in *Jackson v. Commissioner, supra,* and the decision of the Court of Appeals in *Weimerskirch* is misplaced because the facts in both cases differ so significantly from those present here. The deficiency in *Jackson* was premised on respondent's conclusion that the taxpayer was in the drug business. Yet, there was no firsthand testimony introduced at the trial by respondent to support such a conclusion, and he was compelled to admit that the deficiency was based upon what an informant, who did not testify, had told his agent. Thus, there was no evidence to put Jackson in the drug business, much less any evidence relevant to drug income. Similarly, the facts in *Weimerskirch* are inapposite. There, there was a notice of deficiency based upon

---

[2]The above statement is not intended to imply a position with respect to the applicability of the exclusionary rule in tax cases in this Court. We have left that question open. *Proesel v. Commissioner,* 73 T.C. 600 (1979).

[3]While hearsay evidence is inadmissible as substantive evidence, such evidence is hearsay only when offered to prove the truth of the matter asserted. Rule 801(c), Federal Rules of Evidence. Accordingly, such evidence is admissible when offered, not for the truth of the matter asserted, but to establish that respondent did not act arbitrarily in formulating the deficiency. *Avery v. Commissioner,* 574 F.2d 467, 468 (9th Cir. 1978), affg. T.C. Memo. 1976–129.

statements of unidentified informers and information supplied by law enforcement agencies. There was no evidence linking the petitioner to the drug business.[4]

In the instant case there was testimony from a witness, whom the Court believed, that he personally heard petitioner refer to a drug shipment. Furthermore, petitioner was indicted (and subsequently pled guilty to cover the indictment as it related to attempted conspiracy) for the crime of conspiracy in the first degree to commit the crimes of criminal possession of a controlled substance in the first degree, criminal possession of a controlled substance in the third degree, and criminal sale of a controlled substance in the first degree for the period from February 1974 to March 8, 1975. With these facts, respondent cannot be deemed to have arbitrarily placed petitioner in the drug business, a business not noted for its nonprofit purpose. In view of the foregoing factual distinctions, we need not address ourselves to the precise arguments made by the Court of Appeals in the Ninth Circuit in reversing our decision in *Weimerskirch*. We find that the notice of deficiency was not arbitrarily issued. Accordingly, petitioner has the burden of proof of going forward.[5]

Petitioner impliedly challenges the methodology utilized by respondent to determine the deficiency. Respondent is entitled to use any reasonable means of reconstructing income. Further, he is given greater latitude in determining which method of reconstruction to apply where the case involves an illegal enterprise in which petitioner has failed to file a return and has kept no records. Nor is mathematical exactitude required of respondent, for if it were it "would be tantamount to holding that skillful concealment is an invincible barrier to proof." *United States v. Johnson*, 319 U.S. 503, 517–518 (1943).

Respondent used the expenditure method to determine that petitioner has expended $54,000 for 6 kilos of cocaine and $3,156

---

[4]The above is not intended to imply an acceptance of the legal position stated by the Ninth Circuit in *Weimerskirch v. Commissioner*, 67 T.C. 672 (1977), revd. 596 F.2d 358 (9th Cir. 1979).

[5]The Court is not unsympathetic to petitioner's burden. "The law imposes much less of a burden upon a taxpayer who is called upon to prove a negative—for example, that he did not receive the income which the Commissioner claims—than it imposes on a taxpayer who is attempting to sustain a deduction on his return." *Schildhaus v. Commissioner*, T.C. Memo. 1969–283, quoting 9 J. Mertens, Law of Federal Income Taxation, sec. 50.61, p. 158.

on mortgage payments. To these figures, respondent added petitioner's compensation of $5,300 from Caveman Lounge, Inc. In effect, respondent has combined the commonly used receipts method with the expenditures method to determine petitioner's total gross income. The expenditures method is a permissible method for respondent to utilize to reconstruct a taxpayer's income. *Taglianetti v. United States*, 398 F.2d 558, 562 (1st Cir. 1968), affd. 394 U.S. 316 (1969).[6]

Finally, petitioner contends that, if he had the burden of going forward, his own testimony was sufficient to carry this burden.[7] We find some of petitioner's testimony to be credible. However, we reject his complete denial of participation in, or awareness of, illegal narcotics activity. The testimony of the undercover agent and the indictment clearly connect petitioner with the illegal activity.

Nonetheless, our agreement with respondent's determination, that petitioner was in some manner connected with the illegal narcotics business, does not require us to accept in its entirety his finding that petitioner purchased 6 kilos of cocaine. The undercover agent testified that Alvaro Doronzoro, the informant, and petitioner were at Velasco's house where the cocaine was located. Doronzoro was a known dealer in cocaine and a person from whom the undercover agent had, in the past, purchased cocaine. Further, the informant's statement indicated that some of the cocaine was damp and may well have been damaged. Therefore, it can reasonably be assumed that petitioner was not the purchaser of the entire shipment for lack of need or that he was only one of several purchasers or that a portion thereof was not purchased because of the possible damage.

Petitioner testified that he paid $9,000 for the bar in January 1974, and that his family's cost of living was $900 to $1,000 per month. Petitioner has stipulated that his wife's income for 1974 was only $779. Petitioner concedes income of only $5,300. Thus,

---

[6]More often, the expenditures method has been applied to those situations where the items purchased by expenditures are shown to be in the possession of the petitioner. See *Burgo v. Commissioner*, 69 T.C. 729 (1978). However, respondent is not required to present the actual item into evidence. *Giddio v. Commissioner*, 54 T.C. 1530 (1970).

[7]A petitioner's uncorroborated testimony may be sufficient to carry his burden in an unreported income case in which respondent has failed to produce any evidence to support the deficiency. *Demkowicz v. Commissioner*, 551 F.2d 929 (3d Cir. 1977), affg. T.C. Memo. 1975–278.

based on petitioner's own admissions and testimony, he and his wife had expenditures of between $19,800 and $21,000, although they acknowledge income of only $6,079. Petitioner contends that the amounts expended in excess of this amount came from savings or from loans, and points to his interest income and interest paid as shown on his 1973 return in support of this position. Petitioner testified at trial that he had bank books which would prove the existence of the savings account, but failed to produce those records. The burden to produce such evidence rested on petitioner. To the extent petitioner had these records under his control yet failed to produce them, we must assume that if presented at trial the evidence would not have supported petitioner. *Wichita Terminal Elevator Co. v. Commissioner*, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

For the reasons previously expressed, we find that petitioner had unreported taxable income during 1974. It is obvious from the facts herein that the precise amount of unreported income cannot be determined with exactitude. However, this difficulty is not of respondent's or the Court's making. We calculate the unreported income in the following manner: taking the lower estimate by petitioner of his cost of living, $10,800 for such expenses; purchase of the bar in January of 1974, $9,000; and bearing in mind that there were three possible purchasers present when the 6 kilos were examined and that some of the cocaine may have been damaged, and applying principles analogous to those expounded in *Cohan v. Commissioner*, 39 F.2d 540 (2d Cir. 1930), the purchase by petitioner of his share of cocaine, $18,000; for total expenditures of $37,800. This expenditures figure should be reduced by the $779 income reported by petitioner's wife.[8] In so doing, we arrive at a final unreported income figure of $37,021.

Respondent determined additions to tax under sections 6651(a), 6653(a), and 6654(a). The burden of proof is upon petitioner. *Welch v. Helvering*, 290 U.S. 111 (1933).

Petitioner contends that his incarceration at the time his return was due is reasonable cause within the meaning of section 6651(a)(1) for failure to file. This is the only evidence presented

---

[8]Petitioner had not reported his income of $5,300 from Caveman Lounge.

by petitioner on this point, and, consequently, we find that his incarceration at the time the return was due was not reasonable cause for failure to file. Accordingly, petitioner is liable for the addition to tax under section 6651(a). Petitioner failed to present any evidence with respect to the additions to tax under sections 6653(a) and 6654(a). Therefore, he has failed to carry his burden of proof, and accordingly, we find for respondent on these two issues.

The final issue presented is whether petitioner is entitled to claim two of his sons as dependents during 1974. Respondent contends that he was not given fair notice of this matter being in issue. Further, respondent argues that, since the issue was not pleaded in the petition, this Court should not consider it. *Estate of Horvath v. Commissioner*, 59 T.C. 551, 556 (1973).

Petitioner did not raise the dependency issue in the stipulation or pursue it in his briefs. He first raised the issue at the trial and respondent did not object. To the contrary, respondent implied at trial that petitioner could not have supported his wife and the two children on the income alleged by petitioner and his wife. We find that the issue of dependency of the two children was properly raised and that respondent was not placed at a disadvantage by petitioner's raising the issue at trial.

Petitioner testified that he was the sole support of his two children, Carlos and Nestor Llorente, for 1974. Petitioner's wife claimed dependency exemption deduction for their son, Nestor, on her 1974 return. The issue of which parent is entitled to the deduction when the parents are married but elect to file separate returns does not appear to have been previously raised in this Court. Cf. *Maley v. Commissioner*, 17 T.C. 260 (1951).

Resolution of the issue is controlled by determining which parent in fact provided the child's support. The parties have stipulated that the wife's income for 1974 was less than $800, and we have found that petitioner's income was some $37,000. It is obvious from the stipulation that petitioner's wife could not have supported either of her two children. Petitioner testified that both children were students who lived with petitioner and had no earned income during 1974.

Petitioner's testimony on this point was credible and he carried his burden of proof. Therefore, we find that petitioner is

entitled to claim Carlos and Nestor as his dependents on his 1974 return.

*Decision will be entered under Rule 155.*

Reviewed by the Court.

CHABOT, *J.*, concurs.

FAY, *J.*, concurring: I concur with the result reached by the majority in this case because I believe that Judge Sterrett, as the trier of fact, is in the best position to evaluate as a whole the testimony and other evidence upon which his report is based. I write separately to express my concern that this case and *Weimerskirch v. Commissioner,* 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977), are leading us toward bifurcated trials in most if not all cases in this Court involving unreported illegal income.

In *Weimerskirch v. Commissioner, supra, Jackson v. Commissioner,* 73 T.C. 394 (1979), and this case,[1] petitioners charged with unreported illegal income have asked us to "shift the burden of proof to respondent," *Weimerskirch v. Commissioner,* 67 T.C. at 674. I do not believe that there is today a great deal of disagreement about the substantive rule applied in these cases. See *Jackson v. Commissioner, supra; Harbin v. Commissioner,* 40 T.C. 373 (1963). In my view, what remains unsettled is the accompanying procedural issue, namely: At what stage may a petitioner properly ask the Court to shift the burden of proof?

A contributing problem stems from the assumption that the burden of producing evidence can somehow be disassociated from the burden of proof.[2] See *Suarez v. Commissioner,* 58 T.C. 792, 815, 816 (1972) (Judge Drennen concurring; Judge Tannenwald concurring). The majority opinion in the instant case states, "a showing by petitioner that the statutory notice is arbitrarily excessive or without foundation has the effect of shifting the burden of going forward with the evidence to respondent," *supra* at 264, while suggesting that the underly-

---

[1]See *Grove v. Commissioner,* T.C. Memo. 1980–83 (Mar. 20, 1980); *Barber v. Commissioner,* T.C. Memo. 1980–39 (Feb. 12, 1980). See also *Suarez v. Commissioner,* 58 T.C. 792, 813–815 (1972).

[2]See J. McNaughton, "Burden of Production of Evidence: A Function of a Burden of Persuasion," 68 Harv. L. Rev. 1382 (1955). See generally J. Thayer, "The Burden of Proof," 4 Harv. L. Rev. 45 (1890).

ing burden of proof has not been shifted. Judge Drennen, in his dissent, *infra*, would upon an appropriate showing decide "which party must go first with its evidence."[3] The Court of Appeals for the Ninth Circuit has stated "the Commissioner must offer some foundational support for the deficiency determination *before* the presumption of correctness attaches to it," *Weimerskirch v. Commissioner*, 596 F.2d at 361 (emphasis added), implying that some initial showing by the respondent is required in every income reconstruction case. See also *Gerardo v. Commissioner*, 552 F.2d 549, 554 (3d Cir. 1977), affg. in part and revg. in part a Memorandum Opinion of this Court. If the inference to be drawn from the foregoing is that an unreported income case involves a two-stage trial, in which the Court first rules on petitioner's motion to shift the burden of proof and then hears evidence on the underlying issue, I strongly disagree.

*Helvering v. Taylor*, 293 U.S. 507 (1935), involved the amount of income to be reported from a sale of securities. The Supreme Court first reaffirmed the general proposition: "Unquestionably the burden of proof is on the taxpayer to show the Commissioner's determination is invalid."[4] (293 U.S. at 515.) The case went on to hold that *if* the taxpayer has shown the notice of deficiency to be arbitrary and excessive, *then* the respondent must show the correct amount of the deficiency, if any. In other words, if the petitioner has carried his burden of proof (or made a prima facie case), then the burden of proving a deficiency in tax due shifts to the respondent. Mere allegations are not enough because it is petitioner's proof on the underlying issue that determines whether any burden has shifted to the respondent. It is therefore my view that "who goes first" is an illusory issue and that in the ordinary case, a pretrial "motion to shift the burden of proof" would be premature. See *Harbin v. Commissioner*, *supra*. Because the petitioner starts with the burden of proof, he goes first.

---

[3]Compare *Suarez v. Commissioner*, 58 T.C. at 816 (Judge Drennen concurring):

"Petitioner, being the moving party, should provide sufficient evidence to make a prima facie case; otherwise his petition will fail from inertia. Unless the respondent has the burden of proof, I see little reason for him to move forward."

[4]We are not here concerned with any of the well-defined exceptions to this general rule. E.g., sec. 534 (accumulated earnings tax); sec. 6902(a) (transferee liability); sec. 7454(a) (fraud); Rule 142(a), Tax Court Rules of Practice and Procedure (new matter).

To superimpose on the rule of *Helvering v. Taylor, supra,* the concept that the petitioner retains the burden of proof, even though the burden of producing evidence has shifted to the respondent, leads us into theoretical areas fraught with confusion. The fact is that a petitioner in this Court, like plaintiffs elsewhere, bears the risk of nonpersuasion and must show he is entitled to the relief he claims. If he does not, the respondent's determination stands.

I recognize that a petitioner trying to disprove unreported income has a difficult task. See *Weir v. Commissioner,* 283 F.2d 675, 679 (6th Cir. 1960). In such a case, a petitioner's showing that the respondent's notice was arbitrary and excessive is merely one way of meeting his burden of proof. See *United States v. Janis,* 428 U.S. 433, 442 (1976). Under some circumstances, such a showing may be a petitioner's only means of proof, given that a taxpayer cannot be expected to produce records about something that never happened. We approved of such a method of proof in *Jackson v. Commissioner, supra.* But that is a far different matter from allowing a taxpayer to appear, move to shift the burden of proof, and then rest, forcing the respondent to show how the notice of deficiency was constructed. I agree with Judge Tannenwald that taxpayers charged with illegal income are not entitled to special treatment simply by raising the issues decided in *Weimerskirch v. Commissioner, supra,* and in this case.

TANNENWALD, *J.,* concurring: I have no quarrel with the ultimate conclusions reached by the majority. Those conclusions stem essentially from factual determinations by the trier of the facts based upon his evaluation of the evidence of record (including the testimony of the witnesses whom he saw and heard), and I am satisfied that it would be inappropriate for me to substitute my judgment for his. Nor do I have any quarrel with the standard of proof which the trier of the facts (and the majority), in the final analysis, applied in reaching those factual determinations and the ultimate conclusions to be drawn therefrom. I say "in the final analysis" because I have considerable difficulty with the articulation of that standard, and I am concerned that the majority opinion may contribute to the

confusion reflected in the decided cases, over the years and particularly in recent times, with respect to the so-called presumption of correctness of respondent's determination and with respect to the burden of proof and burden of going forward with the evidence. See 2 L. Casey, Federal Tax Practice, secs. 7.7 and 7.8 (1955 ed. and 1979 supp.).

Initially, I note that we are not concerned herein with a suit for refund by a taxpayer or an action by the Government to collect on an assessment or an attempt by a taxpayer to enjoin the collection of an assessment. These situations pose questions regarding the burden of proof and the burden of going forward in a different context than that involved herein. I therefore consider that the decided cases in these arenas do not furnish us with definitive guidance insofar as the situation before us is concerned, especially since the opinions in such cases also reflect confusing and contradictory articulations. See, e.g., *Commissioner v. Shapiro*, 424 U.S. 614, 628–629 (1976); *United States v. Janis*, 428 U.S. 433, 442–443 (1976);[1] *Helvering v. Taylor*, 293 U.S. 507 (1935); *Carson v. United States*, 560 F.2d 693 (5th Cir. 1977); *United States v. Rexach*, 482 F.2d 10, 15–17 (1st Cir. 1973); *Pizzarello v. United States*, 408 F.2d 579 (2d Cir. 1969); *United States v. Lease*, 346 F.2d 696, 698–701 (2d Cir. 1965); *United States v. Molitor*, 337 F.2d 917 (9th Cir. 1964).

The instant case involves the proper application of the concepts of the so-called presumption of correctness of respondent's determination of deficiency, burden of proof, and burden of going forward with the evidence to proceedings in this Court based upon the filing by the taxpayer of a petition for the redetermination in respect of a notice of deficiency.[2] The phrase

---

[1]Although *Janis* involved the applicability of the exclusionary rule to illegally seized evidence, I have serious doubts that the Supreme Court's comments on the "naked assessment" issue were intended to operate within the narrow confines suggested by the majority (see p. 265 of the majority opinion).

[2]The location of the burden of proof has potentially differing consequences—important at least in theory. Where the burden is on the Government, if the evidence before the court is in equilibrium, the Government will lose because of failure to carry *its* burden of proof. If the burden is on the taxpayer, such equilibrium causes the taxpayer to lose because of failure to carry *his* burden of proof. This distinction can account, at least in part, for the confusion in the decided cases regarding the language used in discussing the so-called presumption of correctness of the respondent's determination reflected in his notice of deficiency. In this connection, I note that, if all that a court does is to cause the presumption of correctness of a notice of deficiency to disappear, the taxpayer should still lose (where there is equilibrium in the evidence) because he still has the burden of proof, which he has not carried. To shift only

"presumption of correctness" has curious roots. It first appeared in haec verba in *Welch v. Helvering*, 290 U.S. 111 (1933) (involving a proceeding originally initiated by the taxpayer in the Board of Tax Appeals after the issuance of a notice of deficiency), where the Court stated, "His [the Commissioner's] ruling [deficiency notice] has the support of a presumption of correctness and the petitioner [taxpayer] has the burden of proving it wrong." The authorities relied upon for this pronouncement are questionable because the initial link in the chain of those authorities is *United States v. Rindskopf*, 105 U.S. 418 (1881) (a case involving a suit by the Government to collect an assessment) which the Supreme Court later said had "no bearing" on a situation such as that involved herein. See *Helvering v. Taylor, supra* at 514. See also *United States v. Rexach, supra* at 17 n. 4.

One can only speculate as to what the Supreme Court had in mind when it used the phrase "presumption of correctness," particularly since it appears in the same sentence which imposes the burden of proof on the taxpayer. See *United Aniline Co. v. Commissioner*, 316 F.2d 701, 704 n. 4 (1st Cir. 1963). It seems to me that the Court intended to do no more than to counterbalance a possible argument that the issuance of a notice of deficiency made the respondent the moving party and to reinforce its pronouncement that the taxpayer had the burden of proof.[3] Nevertheless, the fact remains that the phrase "presumption of correctness" has been utilized in differing fashions in later judicial opinions and has resulted in differing treatment of the burden of proof. See *United States v. Janis, supra* at 443–444; *Rockwell v. Commissioner*, 512 F.2d 882, 885–887 (9th Cir. 1975), affg. a Memorandum Opinion of this Court; *Foster v. Commissioner*, 391 F.2d 727, 734–736 (4th Cir. 1968), affg. in part

the burden of going forward to the Government, where the taxpayer has offered no evidence on the substantive issues, is not enough unless, when it fails to do so, one is also prepared to say that such failure causes the Government not to prevail—a line of reasoning that in effect shifts to the Government the burden of proof because of its failure to go forward with sufficient evidence. Cf. *Suarez v. Commissioner*, 61 T.C. 841 (1974). See *Jackson v. Commissioner*, 73 T.C. 394 (1979).

[3]It has been stated that the reasons for imposing the burden of proof on the taxpayer "other than the normal evidentiary rule imposing proof obligations on the moving party" are "the relevant prior Supreme Court precedent indicative, if not determinative of the issue. * * * the presumption of administrative regularity; the likelihood that the taxpayer will have access to the relevant information; and the desirability of bolstering the record-keeping requirements of the Code." See *United States v. Rexach*, 482 F.2d 10, 16 (1st Cir. 1973).

and revg. and remanding in part a Memorandum Opinion of this Court; *United Aniline Co. v. Commissioner, supra* at 704. See also *United States v. Rexach, supra* at 15–17.

All of the decided cases are in agreement that the presumption of correctness of a notice of deficiency does not cause the notice to be evidence as such (see, e.g., *Kentucky Trust Co. v. Glenn*, 217 F.2d 462, 465–466 (6th Cir. 1954)), and that, at least initially, the taxpayer has the burden of proof. Where they part company is where the taxpayer comes forward with countervailing evidence. Thus, the Second Circuit Court of Appeals states its position as follows (see *Bernuth v. Commissioner*, 470 F.2d 710, 714 (2d Cir. 1972), affg. 57 T.C. 225 (1971)):

> It is black-letter law that deficiency determinations by the Commissioner of Internal Revenue carry with them a presumption of correctness. * * * The burden is on the taxpayer to show that the Commissioner is wrong. * * * Once the taxpayer shows that the deficiency assessment is wrong, the burden shifts back to the Commissioner to show the existence and amount of the deficiency. [Citations omitted.]

See also *Foster v. Commissioner*, 391 F.2d at 735.

The Ninth Circuit Court of Appeals states the rule where deductions are involved as follows (see *Rockwell v. Commissioner*, 512 F.2d at 885):

> The presumption in favor of the Commissioner is a procedural device which requires the taxpayer to come forward with enough evidence to support a finding contrary to the Commissioner's determination. * * *
>
> The burden of proof is yet another hurdle. After satisfying the procedural burden of producing evidence to rebut the presumption in favor of the Commissioner, the taxpayer must still carry his ultimate burden of proof or persuasion. * * * [Citations omitted.]

Where an omission from gross income is involved, the Ninth Circuit Court of Appeals takes a somewhat different position (see *Herbert v. Commissioner*, 377 F.2d 65, 69, 71 (9th Cir. 1967), revg. a Memorandum Opinion of this Court):

> The general rule is that the burden of proof is on the Commissioner to establish that the taxpayer received income. However, the Commissioner's determination of a deficiency satisfies such burden since the determination made by the Commissioner is presumptively correct. The taxpayer then has the burden of overcoming this presumption by a preponderance of the evidence. * * * When the taxpayer has overcome the presumption by competent and relevant evidence, the presumption disappears and drops out of the case. * * *
>
> \* \* \* \* \* \* \*
>
> The burden of proof was not upon the taxpayer to show that he had no

income. The burden was upon the Commissioner to establish that the taxpayer received the money as income. It appears to us that the Tax Court has confused the burden of establishing receipt of income with the burden of supporting allowable deductions from income. In the former case the burden is on the Commissioner, and in the latter case the burden is upon the taxpayer. * * *
[Citations omitted.]

See also *Rockwell v. Commissioner, supra* at 885–886.

The First Circuit Court of Appeals, in a case which involved a suit by the Government on an assessment, sets forth succinctly its position where a proceeding in this Court is involved (*United States v. Rexach*, 482 F.2d at 16):

Whatever uncertainty may once have existed because of our use of the general phrase "burden of proof" was dispelled by our opinion in United Aniline Co. v. C. I. R., 316 F.2d 701 (1st Cir. 1963) [a case involving *constructive receipt of income* and a petition to this Court for redetermination in respect of a notice of deficiency]. We there explicitly rejected the suggestion of the Fourth Circuit in Stout v. C. I. R., 273 F.2d 345, 350 (4th Cir. 1959), that the Commissioner's assessment merely shifts to the taxpayer the burden of going forward with evidence, and disapproved the use of the term "presumption" because of the danger, illustrated in Clark v. C. I. R., 266 F.2d 698 (9th Cir. 1959), of misleading courts into believing that if the taxpayer introduced evidence from which it "could" be found that the assessment was erroneous, the burden of proof was placed on the Commissioner. We unambiguously stated that whether or not reference was made to a presumption, it must be made clear that "the taxpayer never loses the burden of proving the Commissioner's determination erroneous." 316 F.2d at 704; *see also n. 4,* "Presumption or no, the burden of proof never shifts."

My own view is that the foregoing articulation by the First Circuit Court of Appeals is clearly correct, although, as will subsequently appear (see pp. 278 – 279 *infra*), there may be limited exceptions which the First Circuit, at least impliedly, itself recognizes. See *Marx v. Commissioner*, 179 F.2d 938, 942 (1st Cir. 1950). Indeed, I observe that, in view of the difficulties which that phrase "presumption of correctness" has caused, it would be better if it were expunged from the case law, although I recognize that it is probably too late to attempt to do so. At the very least, however, we should recognize that the only function of that phrase is to make clear in the usual tax case,[4] that the burden of proof is and remains upon the taxpayer regardless of

---

[4] I say "usual" because I recognize that in several situations, notably in respect of the issue of fraud, the burden of proof is on the respondent. See sec. 7454; Rule 142, Tax Court Rules of Practice and Procedure.

what he does in respect of his initial burden of going forward with the evidence.[5]

Nor do I believe that any distinctions as to the location of the burden of proof should be made between cases involving deductions and those involving omissions from gross income. In this connection, however, I am prepared to recognize that, where an omission from gross income is involved, the burden of proof on the taxpayer is accentuated by the fact that he is required to prove a negative and that perhaps the standard of required proof to make a prima facie case of nonreceipt of such income and thereby shift the burden of going forward with the evidence to respondent should be relaxed. See *Weir v. Commissioner*, 283 F.2d 675, 679 (6th Cir. 1960), revg. and remanding a Memorandum Opinion of this Court; *Cohen v. Commissioner*, 266 F.2d 5 (9th Cir. 1959), remanding a Memorandum Opinion of this Court. See also 9 J. Mertens, Law of Federal Income Taxation, sec. 50.61 (1977 rev.). Indeed, in such situations, where, by hypothesis, there may be no documentary evidence, a court perhaps should be more willing to accept a taxpayer's uncorroborated testimony as satisfying his initial burden. See *Demkowicz v. Commissioner*, 551 F.2d 929 (3d Cir. 1977), revg. a Memorandum Opinion of this Court. See L. Casey, Federal Tax Practice, sec. 7.8 (1979 supp.). But, whatever the degree of relaxation of the level of proof required, the taxpayer's credibility must still be on the line and the difficulties inherently involved in such a situation ought not to be an excuse for shifting the burden of proof. Obviously, if the taxpayer's testimony is accepted, he will have made a prima facie case and the failure of the respondent to come forward with adequate countervailing evidence, i.e., to overcome or to put in equilibrium such a prima facie case, will result in a decision for the taxpayer on the ground that he has carried his burden of proof. See *Schildhaus v. Commissioner*, 442 F.2d 1343 (2d Cir. 1971), affg. per curiam T.C. Memo. 1969–283.

I am not unaware of the fact that the instant case involves alleged unreported income from trafficking in narcotics and that the burden on the taxpayer to prove a negative may indeed be

---

[5]See *Carson v. United States*, 560 F.2d 693, 695–696 (5th Cir. 1977), where the Fifth Circuit Court of Appeals said, "The burden [of proof] and the presumption [of correctness], which are for the most part but *the opposite sides of a single coin*, combine to require the taxpayer always to prove by a preponderance of the evidence that the Commissioner's determination was erroneous." (Emphasis added.)

heavy. But he is not entirely without means to elicit the underlying facts which respondent used to develop his notice of deficiency. Title VII of the Tax Court Rules of Practice and Procedure is available to him for this purpose, although he must recognize that resort to discovery under that title has its limitations because of the rule that we generally do not look behind a deficiency notice. See *Greenberg's Express, Inc. v. Commissioner,* 62 T.C. 324, 327 (1974). See, e.g., *Barger v. Commissioner,* 65 T.C. 925 (1976); *Industrial Electric Sales & Service, Inc. v. Commissioner,* 65 T.C. 844 (1976); *Morris v. Commissioner,* 65 T.C. 324 (1975); *Dvorak v. Commissioner,* 64 T.C. 846 (1975); *Branerton Corp. v. Commissioner,* 64 T.C. 191 (1975). The rule of *Greenberg's Express, Inc. v. Commissioner, supra*—a rule fashioned to deal with the usual case where the basis of respondent's determination of a deficiency will be obvious, with its factual foundation known or independently available to the taxpayer—does not stand as a barrier to the use of discovery procedures, where the burden on the taxpayer is a heavy one.[6] See *Branerton Corp. v. Commissioner, supra* at 200.

Similarly, the protective shield of a deficiency notice is not so absolute that we will not at the appropriate time permit evidence to be brought to our attention which could cause us to conclude that the respondent's determination was arbitrary and excessive,[7] e.g., without "factual foundation" or "rational basis,"

---

[6]Indeed, in many cases such as the one before us, the claimed amounts of omitted income are so large that one would have expected the respondent to assert an addition to tax for fraud, as to which he would have the burden of proof and, in the usual case, the burden of going forward first with his evidence at the trial. Under such circumstances, although the burden of proof as to the underlying deficiency would still be on the taxpayer (e.g., *Cefalu v. Commissioner,* 276 F.2d 122 (5th Cir. 1960), affg. a Memorandum Opinion of this Court; *Marcus v. Commissioner,* 70 T.C. 560, 577 (1978)), the taxpayer would at least have the opportunity of knowing, at the outset, the parameters of the respondent's case.

[7]It should be noted that mere excessiveness never is sufficient, since this is the situation in many cases where the courts determine that the respondent is entitled to a deficiency in a lesser amount than that set forth in his deficiency notice. *Helvering v. Taylor,* 293 U.S. 507 (1935), used the words "arbitrary" and "excessive" conjunctively. The implications of *Helvering v. Taylor* are far from clear. Some courts have used it to shift to respondent the burden of proof, others only to shift the burden of going forward with the evidence on the ground that a showing of arbitrariness in respondent's determination removes the presumption of correctness. In *United States v. Janis,* 428 U.S. 433, 441 (1976), the Supreme Court indicated only that *Taylor* stood for the proposition that, where the respondent's determination was without rational foundation and excessive, the determination was "not properly subject to the usual rule with respect to the burden of proof in tax cases" and commented (n. 8) that the case had never previously been cited by the Supreme Court on the burden-of-proof issue. See also 2

and that therefore the burden of proof should be placed upon respondent. Cf. *Helvering v. Taylor*, 293 U.S. 507 (1935); *Gordon v. Commissioner*, 63 T.C. 51, 73 (1974). To take a contrary view and preclude ourselves from ever inquiring into the factual foundations of a deficiency notice would stultify the judicial process and make a mockery out of the Court's power to take necessary remedial action.

What is the appropriate time and what are the limited circumstances can only be determined on a case-by-case basis. I note, however, that in the landmark case of *Helvering v. Taylor, supra,* the determination was made—albeit on appeal—after a full trial, and it would appear that this should be the normal procedure.[8] See *Kentucky Trust Co. v. Glenn*, 217 F.2d at 467. Where, however, there is a strong and clear potential basis for the claim of arbitrariness on the part of respondent, primarily but not necessarily confined to the constitutional arena, inquiry prior to trial may be in order. *Suarez v. Commissioner*, 58 T.C. 792 (1972).

Finally, I recognize that, where projections of income based only upon evidence of isolated transactions are involved, the potential for arbitrariness and capriciousness in respondent's deficiency notice is great. In fact, this was the situation in *Weimerskirsch v. Commissioner*, 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977), and *Gerardo v. Commissioner*, 552 F.2d 549 (3d Cir. 1977), revg. a Memorandum Opinion of this Court, and may have struck the Courts of Appeals as being *so egregious*[9] as to justify their reversal of our decisions. I will not attempt to sit in judgment on the correctness of the results in those cases;

---

L. Casey, Federal Tax Practice, sec. 7.7, n. 47 (1955 ed.), where it is suggested that *Helvering v. Taylor* did no more than assure a further hearing to the taxpayer.

[8]Indeed, this is precisely what occurred in *Jackson v. Commissioner*, 73 T.C. 394 (1979), where respondent, apparently concerned that the Court might believe the taxpayer's testimony, chose to disclose the basis of his deficiency notice and revealed its utterly flimsy foundation. The Court specifically reserved its position as to what it would have done if respondent had not taken this step.

[9]I note that, as the majority points out, the respondent has broad authority to reconstruct income. Moreover, the projection method has passed muster on several occasions. See cases cited in *Jackson v. Commissioner*, 73 T.C. 394, 403 n. 4 (1979).

they are clearly distinguishable from the instant case, where no such projection is involved.[10] My disagreement with the Courts of Appeals in those cases need only extend—at the moment—to the fact that they reached their conclusions by what I consider to be an erroneous and unfortunate application of the burden-of-proof rule.[11]

In sum, we run on a muddy track with respect to the decided cases regarding the so-called presumption of correctness and its impact on the burden of proof and the burden of going forward with evidence. What has developed seems to be a different standard for taxpayers allegedly engaged in illegal activities than for other types of taxpayers. The result is a more lenient rule in tax cases for those who may well have violated laws not involving taxes. With this result I am in strong disagreement. Such persons are entitled to have the tax laws applied to them in the same manner as others, but such treatment is all they are entitled to expect or receive.

FEATHERSTON and HALL, *JJ.*, agree with this concurring opinion.

DRENNEN, *J.*, dissenting: In a case involving allegations of unreported income, when it appears that the taxpayer has established that respondent's determination is without rational foundation in fact and based on unsupported assumptions, he will be relieved of his burden of proof as to the amount of tax due, and the burden will be on respondent to move forward with the evidence. *Helvering v. Taylor*, 293 U.S. 507 (1935); see *Gordon v. Commissioner*, 63 T.C. 51, 73 (1974); *Human Engineering Institute v. Commissioner*, 61 T.C. 61, 66 (1973), appeal dismissed (6th Cir., Apr. 1, 1975), cert. denied 423 U.S. 860 (1975). As I believe this to be the case here, I respectfully dissent.

A question arises in a case such as this whether, in determin-

---

[10]In the instant case, there was neither a projection nor reconstruction but an expenditure for the purchase of a specific quantity of drugs. It was petitioner's burden to convince us that he did not make such purchase.

[11]I note that the Courts of Appeals in both *Weimerskirsch* and *Gerardo* relied upon *United States v. Janis*, 428 U.S. 433 (1976), although the Supreme Court specifically refused to resolve the burden-of-proof issue as to the ultimate liability for tax. (See 428 U.S. at 442–443.)

ing if respondent's notice of deficiency is arbitrary and excessive, we should look only at the evidence in respondent's possession at the time the notice is issued or at the evidence presented at the trial as well. This is important because on this conclusion may ride the decision as to which party must go first with its evidence. However, I will not explore that question here because the evidence is before us and the conclusion can be drawn from all the evidence.

Based on its conclusion that respondent did not arbitrarily determine that petitioner was in the drug business, the majority allows the barrier of the presumption of correctness to be erected upon this conclusion. In doing so, it makes an effort to distinguish *Weimerskirch v. Commissioner*, 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977), and *Jackson v. Commissioner*, 73 T.C. 394 (1979). Initially, I believe those cases are indistinguishable and that respondent must produce some direct evidence of petitioner's involvement in the sale of narcotics before the presumption can be relied upon. See *Avery v. Commissioner*, 574 F.2d 467 (9th Cir. 1978). However, that analysis begs the point, as the primary question to be answered is not whether petitioner was associated with the drug business but whether respondent was reasonable in his assertion that petitioner had $54,000 of unreported income from that source.

The evidence relied on by the majority (petitioner's statement overheard by the undercover agent and the indictment) may suggest that petitioner had some peripheral association with the drug business, but from this, alone, it is unreasonable to conclude that petitioner either spent $54,000 to purchase drugs or had income in that amount. The overheard statement, while probably admissible, does not prove that petitioner either bought or sold drugs or received any income from that source; an indictment, alone, does not prove the charge contained therein. Respondent obviously relied on the testimony of the informer, who was not produced as a witness, to conclude that petitioner had $54,000 in income. If this is not arbitrary, I think justice demands that petitioner be given an opportunity to cross-examine the witness upon whose testimony respondent bases his determination. If, for reasons of his own, respondent chooses not to produce the witness, I believe respondent must either produce other evidence or forego the presumption of correctness. See *Weimerskirch v. Commissioner, supra* at 360 n.2. In my opinion,

the majority bootstraps the evidence which it claims is admissible to show that the notice of deficiency was not arbitrary in order to establish a presumption based on evidence which would not be admissible to prove the deficiency.

Nor do I believe that the attempted linking of petitioner with drug activities, in this fashion, distinguishes this case from *Weimerskirch* or *Jackson*. If, as the majority concludes, the notice of deficiency can be grounded totally on inadmissible evidence, then there was ample evidence,[1] albeit inadmissible, to place the taxpayers in each of those cases in the drug business. I quote from page 265 of the majority opinion to make my point:

> The deficiency in *Jackson* was premised on respondent's conclusion that the taxpayer was in the drug business. Yet, there was no firsthand testimony introduced at the trial by respondent to support such a conclusion, and he was compelled to admit that the deficiency was based upon what an informant, who did not testify, had told his agent. Thus, there was no evidence to put Jackson in the drug business, much less any evidence relevant to drug income. Similarly, the facts in *Weimerskirch* are inapposite. There, there was a notice of deficiency based upon statements of unidentified informers and information supplied by law enforcement agencies. There was no evidence linking the petitioner to the drug business. [Fn. ref. omitted.]

I can think of no better description of the circumstances in this case.

Respondent's determination as to the amount of unreported income was entirely based on a statement by an unidentified informer to the effect that petitioner, with others, traveled to a house in which was stored 6 kilos of cocaine. From this, respondent concluded petitioner bought all 6 kilos and determined that he made an expenditure of $54,000 for this purchase which was charged to petitioner as taxable income. The missing link, one which I believe is fatal, is that the record is devoid of evidence indicating that petitioner made this purchase. (The fact that the unidentified informer did not tell the undercover agent that petitioner purchased any cocaine on this occasion would tend to belie the fact.) Indeed, the majority could not even

---

[1]In *Weimerskirch v. Commissioner*, 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977), the notice was based on information provided by two informers, the Drug Enforcement Administration and the Yakima and Spokane Police. The notice in *Jackson v. Commissioner*, 73 T.C. 394 (1979), was based on information obtained from the Drug Enforcement Administration which relied on information provided by an informant (who the agent believed to be credible, though this Court did not), in the taxpayer's organization. Additionally, the taxpayer had previously been convicted on drug-related charges.

accept this contention as reasonable and decreased respondent's adjustment by 66 percent. By making such a large adjustment, I believe the majority concedes that respondent's determination was arbitrary and excessive. Under such circumstances, petitioner should be treated as having met his burden, respondent's determination should be stripped of any presumption of correctness, and the burden should be on respondent to support his determination of deficiency. *Cohen v. Commissioner*, 266 F.2d 5 (9th Cir. 1959).

I cannot say that respondent has carried that burden, as the only admissible evidence introduced was petitioner's plea of guilty to an *attempted* conspiracy to possess and sell the cocaine.[2] If conspiracy is an agreement or plan among two or more persons to commit a crime in the future, together with one overt act in furtherance thereof (see *People v. Epton*, 19 N.Y.2d 496, 227 N.E.2d 829 (1967), cert. denied 390 U.S. 29 (1968)), then attempted conspiracy must be merely an agreement, hardly an appropriate event to tax.

Additionally, although the evidence indicates expenditures, other than for purchase of cocaine, in excess of acknowledged income in the approximate amount of $13,700, the record indicates petitioner reported $565 of interest income and claimed an interest deduction of $531 in the previous taxable year. Taken together, the principal amount to which this interest relates more than adequately accounts for the source of the funds. Though the majority discounts this evidence, citing *Wichita Terminal Elevator Co. v. Commissioner*, 6 T.C. 1158 (1946), this does not change the highly probative fact that petitioner reported and paid tax on the interest relating to the principal amount, a fact that strongly suggests the existence of his savings accounts.

I believe the holding today is a significant retreat from our position in *Jackson* and gives carte blanche to the Government to seek assessments against taxpayers who, like petitioner, are on the periphery of illegal activities, based on suspicion alone.

GOFFE, WILES, WILBUR, and NIMS, *JJ.*, agree with this dissenting opinion.

---

[2]The majority appears to rely on the indictment, alone, rather than the plea. An indictment, alone, certainly does not prove that petitioner was either in the drug business or that he received income therefrom.