T.C. Memo. 2018-95

UNITED STATES TAX COURT

GERALD NELSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12101-17.                               Filed June 28, 2018.

Gerald Nelson, pro se.

<u>Brian E. Peterson</u> and <u>Monica E. Koch</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:  With respect to petitioner's Federal income tax for 2014,

the Internal Revenue Service (IRS or respondent) determined a deficiency of

$1,418.[1]  The questions for decision are whether petitioner received, but failed to

_____

[1]All statutory references are to the Internal Revenue Code in effect for the
(continued...)

**[*2]** report, unemployment compensation of $7,756 and wages of $1,678 for that year. Concluding that he did, we will sustain the deficiency that respondent has determined.

FINDINGS OF FACT

Petitioner resided in New York when he timely petitioned this Court. From 2005 through March 2014, petitioner was employed as a van driver by MV Transportation Co. (MV). His job was transporting elderly and disabled people around the five boroughs of New York City.

In March 2014 MV terminated petitioner's employment for alleged involvement in a vehicle accident. Thereafter petitioner obtained short-term employment with Empire Films Services (Empire), for which he received wages of $1,678. The IRS received from Empire a Form W-2, Wage and Tax Statement, reporting that it had paid petitioner during 2014 wages in that amount, from which it had withheld Federal income tax of $354. He applied for and received during 2014, from the New York State Department of Labor (NYDOL), unemployment compensation of $7,756. NYDOL reported that payment to petitioner and to the IRS on a Form 1099-G, Certain Government Payments.

---

[1](...continued)
year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

**[*3]**  Believing that petitioner's employment had been wrongfully terminated, his labor union initiated an arbitration proceeding.  In June 2014 the arbitrator ruled that MV had improperly terminated petitioner's employment, ordered that he be reinstated, and "retained jurisdiction to decide any disputes concerning back pay."

In August 2014 the arbitrator issued a supplemental opinion to "clarify how back pay may be calculated."  The arbitrator explained that "back pay is a term of art and means the amount the employee would have earned had he not been discharged less what the employee did earn * * * during the period of the outage."  Thus, "where an employee receives income from any source that is in any way related to the loss of employment, * * * that amount constitutes a deduction in the calculation of a make whole remedy."

Pursuant to the arbitrator's ruling, petitioner's labor union and MV in September 2014 executed a backpay agreement requiring MV to pay petitioner "gross back pay" for 21 weeks, or $18,404, "less $6,471 that * * * [petitioner] received from New York State in unemployment benefits."[2]  The agreement further provided that, "in the event * * * [petitioner] is required by New York State to re-

---

[2]The record does not explain the difference between the $7,756 of unemployment benefits that NYDOL reported having paid petitioner and the $6,471 figure the parties adopted in the backpay agreement.  Petitioner evidently received additional unemployment checks after that agreement was finalized.

[*4] pay any amount of unemployment compensation because of his reinstatement, * * * [MV] shall reimburse him for such amounts as he may be required to repay." Petitioner admitted at trial that NYDOL did not require him to repay any of the unemployment compensation he had received.

The backpay agreement provided that MV would pay petitioner $11,933, "less applicable taxes and other payroll deductions, in full settlement of his arbitration case." That sum represented the difference between the gross backpay ($18,404) and the unemployment compensation he had received to date ($6,471). On September 6, 2014, MV issued petitioner a check for $11,933 minus applicable taxes and payroll deductions.

Petitioner filed for 2014 a delinquent Federal income tax return on Form 1040EZ, Income Tax Return for Single and Joint Filers With No Dependents. The IRS selected his return for examination after receiving third-party information reports showing income he had failed to report. On February 27, 2017, the IRS issued him a timely notice of deficiency reflecting the unreported income, and he timely petitioned this Court for redetermination.

OPINION

The IRS' determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving them erroneous. Rule

**[*5]** 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). Petitioner does not contend that the burden of proof shifts to respondent under section 7491(a) as to any issue of fact.

Absent stipulation to the contrary, appeal of this case would lie to the U.S. Court of Appeals for the Second Circuit. <u>See</u> sec. 7482(b)(1)(A). That court has held that, in order for the presumption of correctness to apply in unreported income cases, the Commissioner must establish some evidentiary foundation linking the taxpayer to the income-producing activity. <u>See, e.g.</u>, <u>Llorente v. Commissioner</u>, 649 F.2d 152, 156 (2d Cir. 1981), <u>aff'g in part, rev'g in part and remanding</u> 74 T.C. 260 (1980). Once the Commissioner has produced evidence linking the taxpayer to an income-producing activity, the burden of proof shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary or erroneous. <u>Helvering v. Taylor</u>, 293 U.S. 507, 515 (1935); <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 76-77 (1986).

Gross income "means all income from whatever source derived," including "unemployment compensation." Secs. 61(a), 85(a). For 2014 the IRS received from Empire a Form W-2 reporting that it had paid petitioner during 2014 wages of $1,678. Respondent also introduced two relevant documents that confirm this information: (1) a copy of the notice of deficiency issued to petitioner for 2014

**[*6]** and (2) petitioner's Wage and Income Transcript for 2014. We find that these documents sufficiently connect petitioner to an income-producing activity. See, e.g., Banister v. Commissioner, T.C. Memo. 2008-201 (holding that a notice of deficiency indicating third-party payers paid the taxpayer specific amounts in question satisfied the minimal evidentiary burden), aff'd, 418 F. App'x 637 (9th Cir. 2011).[3]

At trial petitioner did not deny receiving wages of $1,678, but asserted, referring to Empire, that he "did not know who these guys are." We did not find petitioner's testimony credible. We conclude that he has failed to carry his burden of proving respondent's determination erroneous and hence that he received during 2014 unreported taxable wages of $1,678.

For 2014 the IRS received from NYDOL a Form 1099-G reporting that it had paid petitioner unemployment compensation of $7,756, from which it had

---

[3]Section 6201(d) provides that, "if a taxpayer asserts a reasonable dispute with respect to any item of income reported on an information return * * * and the taxpayer has fully cooperated with the Secretary," the IRS may not rely solely on the information return to satisfy its burden of production. Petitioner has not alleged a "reasonable dispute" concerning the Form W-2, and he wholly failed to cooperate with IRS representatives during the examination and trial preparation. See Parker v. Commissioner, T.C. Memo. 2012-66, 103 T.C.M. (CCH) 1321, 1323 (finding section 6201(d) inapplicable where the taxpayer "did not bring any factual dispute over any item of income to the IRS' attention within a reasonable time" but instead raised frivolous arguments).

**[*7]** withheld Federal income tax of $775. Petitioner does not dispute having applied for and received unemployment compensation, and the parties to the backpay agreement explicitly acknowledged that he had done so. Rather, he argues that he should not have to pay tax on this income because MV "took it away" by offsetting it against his gross backpay.

Petitioner is mistaken. The arbitrator specifically ruled that any income petitioner received "that is in any way related to the loss of employment * * * constitutes a deduction in the calculation of a make whole remedy." This offset is necessary to prevent the windfall that would result if petitioner were to receive full-time gross pay for the 21-week period, plus unemployment compensation that he would not have received if had been employed full time.

The backpay agreement accordingly provided that the amount due to petitioner was gross backpay for the 21-week period, "less $6,471 that * * * [he] received from New York State in unemployment benefits." In effect, the unemployment benefits petitioner received replaced a portion of the (larger) backpay award that he would otherwise have received. Instead of receiving a taxable backpay award of $18,404, he received two income streams totaling $18,404. Both income streams were taxable. We accordingly sustain respondent's determination that petitioner received taxable unemployment compensation of $7,756 in 2014.

**[*8]**  In the notice of deficiency the IRS gave petitioner credit for the $354 and $775 of Federal income tax that Empire and NYDOL had withheld.  The sum of those amounts is $1,129.  The amount ultimately in dispute in this case is thus only $289 (the deficiency of $1,418 less withholding credits of $1,129).

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.