ANGELINA SAAVEDRA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; EDUARDO SAAVEDRA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Saavedra v. Commissioner
Docket Nos. 7760-85; 7761-85.
United States Tax Court
T.C. Memo 1988-587; 1988 Tax Ct. Memo LEXIS 616; 56 T.C.M. (CCH) 953; T.C.M. (RIA) 88587; December 27, 1988. John Campo III, for the petitioners. Marikay Lee-Martinez, for the respondent. HAMBLEN
*616 MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: For these consolidated cases, respondent determined deficiencies for petitioners' taxable year ended December 31, 1976, as follows: Petitioner Eduardo Saavedra
Additions to Tax
Deficiency
Sec. 6651(a)(1) [1]
Sec. 6653(a)
Sec 6654(a)
Sec. 1401
$ 104,264.00
$ 26,066.00
$ 5,213.00
$ 3,883.21
$ 1,209.00
*617 Petitioner Angelina Saavedra
Additions to Tax
Deficiency
Sec. 6651(a)(1)
Sec 6653(a)
Sec. 6654(a)
$ 103,055.00
$ 25,764.00
$ 5,153.00
$ 3,838.18
After a concession by respondent, [2] the issues for decision are: (1) whether petitioners had unreported income in the taxable year 1976, and (2) whether petitioners are liable for additions to tax under sections 6651(a)(1), 6653(a), and 6654(a) for the taxable year 1976. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners lived in Nogales, Arizona, when they filed their petitions. Petitioners currently reside in Tucson, Arizona. Respondent determined in his notices of deficiency that petitioners *618 had a combined total of $ 336,985.42 of unidentified bank deposits income and $ 3,715.11 of interest income in the year 1976. Since Arizona is a community property state, respondent divided these amounts equally between the two petitioners so that each petitioner's notice of deficiency reflects one-half of the unreported income. Respondent used the following five Valley National Bank accounts over which petitioners had signature authority and control for his determination in the notices of deficiency: account nos. XXXX-3591, XXXX-9806, XXXX-5672, XXXX-2874, and XXXX-3155. These five bank accounts had respective net deposits in 1976 of $ 27,876.92, $ 262.50, $ 30,000, $ 188,546, and $ 90,300, for a total of $ 336,985.42. During audit, respondent's revenue agent asked petitioners for all of their bank accounts. During trial preparation, respondent determined from the United States Custom Service's records that petitioners had another bank account, number XXX7-300, at the First Interstate Bank in 1976. Three checks or drafts issued by Mexican banks payable to petitioner Eduardo Saavedra (hereinafter, when used in the singular form, "petitioner" refers to Eduardo Saavedra) totaling *619 $ 33,274 were deposited in petitioners' First Interstate Bank account. One day before trial, petitioners provided respondent with the records from Valley National Bank account number XXXX-7439 in response to respondent's subpoena. Petitioners had bank deposits in 1976 to their Valley National Bank account number XXXX-7439 and First Interstate Bank account number XXX7-300 which were not taken into account in respondent's notices of deficiency. The 1976 deposits made into petitioners' Valley National Bank account number 2661-7439 and First Interstate Bank account number XXX7-300 increase petitioners' unidentified bank deposits in the year 1976 to a total of $ 449,365.93. Petitioners did not file Federal income tax returns for 1976. Petitioner was born in Spain. Petitioner immigrated to the United States in 1961 and lived and worked in California from 1962 to 1971. Petitioner married Angelina Saavedra in 1961 and they were married in the year at issue. Petitioner became a naturalized United States citizen in 1968 or 1969. Angelina Saavedra is a United States citizen by birth. Petitioner lived in Mexico City from 1971 to 1976. Angelina Saavedra also lived in Mexico for part *620 of that time. Angelina Saavedra returned to the United States in 1975. Petitioner traveled to the United States many times during 1976. Petitioner was in Europe for forty-five days in 1976. From 1974 through 1976, petitioner worked for the Mexican Secretary of Health as the Administrative Sub-Director of its sub-agency, the Direction General for Maternal and Infantile Medical Assistance (hereinafter referred to as DGAMMI). Petitioner officially ended his job as Administrative Sub-Director at DGAMMI on November 30, 1976, or December 1, 1976. Petitioner's yearly salary at DGAMMI was at least $ 6,000. Petitioner received commissions in addition to his salary. Petitioner received the commissions through his friend Miguel Jagou LaCort. Petitioner also received approximately $ 97,834 in bank drafts from Miguel Jagou LaCort in 1976. Petitioner deposited these individual bank drafts from Miguel Jagou LaCort in bank accounts in Nogales, Arizona. During the years 1974 through 1976, the United Nations, through the Pan-American Organization of Health, agreed to fund the Mexican Secretary of Health through its sub-agency, DGAMMI, with $ 8 million for a family-planning program known *621 as the "1300 Program." Sometime in 1977, the Secretary of Health realized that approximately 11 million pesos ($ 523,809 using the December 31, 1976 rate of exchange) had disappeared from DGAMMI when petitioner had been the Administrative Sub-Director. Petitioner had authority to sign checks at DGAMMI with the signatures of two other authorized people. Petitioner was investigated by the Mexican Secretary of Health for the disappearance of funds at DGAMMI. In March 1979, the United States Customs Service began to investigate whether petitioners were bringing large sums of money into the United States from Mexico. The United States Customs Service received information from the Drug Enforcement Agency that petitioner was suspected of taking $ 5 million from the Mexican Government. The information from Mexican authorities and INTERPOL reported to the United States Customs Service indicated that petitioner was suspected of being involved in the disappearance of funds from the Mexican Secretariat of Health. Mexican police officials and bank investigators came to the United States and contacted the United States Customs Service in order to locate petitioner and arrange for his return *622 to Mexico in connection with the loss of funds by the Mexican government. The Mexican Federal police officers conducted a two-week around-the-clock surveillance of petitioner with the United States Customs Service. OPINION The first issue for our consideration is whether petitioners had unreported income in taxable year 1976. Respondent determined that petitioners had total unreported income of $ 336,985.42 in taxable year 1976. Petitioners bear the burden of proving that respondent's determination is incorrect. Rule 142(a). Normally, we do not look behind a notice of deficiency to examine the evidence used in making the deficiency determination. Greenberg's Express, Inc. v. Commissioner,62 T.C. 324, 327 (1974). On occasion, however, we have recognized an exception to this rule in cases involving illegal unreported income where respondent introduced no substantive evidence and the taxpayer challenged the notice of deficiency as being arbitrary. Jackson v. Commissioner,73 T.C. 394, 401 (1979). If we find respondent's determination to be arbitrary, the burden of going forward with the evidence shifts to respondent. Jackson v. Commissioner, supra at 401. *623 Petitioners filed a "MOTION TO COMPEL COMMISSIONER TO SUBSTANTIATE PRESUMPTION OF CORRECTNESS." The Court ordered that petitioners' motion be filed as a motion to shift the burden of going forward. Petitioners, relying on Dellacroce v. Commissioner,83 T.C. 269 (1984); Llorente v. Commissioner,649 F.2d 152 (2d Cir. 1981), affg. in part, revg. in part, and remanding 74 T.C. 260 (1980); Jackson v. Commissioner,73 T.C. 394 (1979); and Weimerskirch v. Commissioner,596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977), contend that because the notice of determination was arbitrary, respondent has the burden of going forward with evidence linking petitioners to an income-producing activity. In Weimerskirch v. Commissioner, supra, respondent based his determination that the taxpayer had unreported income from the sale of heroin upon statements of two confidential informants and information from law enforcement agencies. Respondent presented no evidence admissible to support the deficiency determination. The Ninth Circuit held that in the absence of any substantive evidence *624 in the record to support the deficiency determination, the notice of deficiency was arbitrary and the burden of going forward with the evidence shifted to respondent. Since appeal in the instant case lies in the Ninth Circuit, we are bound to follow Weimerskirch.Golsen v. Commissioner,54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971). However, Weimerskirch is distinguishable from petitioners' case because in Weimerskirch respondent did not substantiate the determination of unreported drug income by showing the taxpayer's net worth, bank deposits, cash expenditures, or source and application of funds. In petitioners' case, respondent substantiated the determination of unreported income by showing petitioners' bank deposits for the year. A bank deposit is prima facie evidence of income and respondent is not required to prove a likely source of that income. Estate of Mason v. Commissioner,64 T.C. 651, 656-657 (1975), affd. 566 F.2d 2 (6th Cir. 1977). In Llorente v. Commissioner, supra, respondent reconstructed the taxpayer's income using *625 the expenditures method, but there was no evidence that taxpayer had actually received payments. Respondent's witness testified that he had heard cocaine dealers speaking with the taxpayer about cocaine shipments. Respondent presented no other evidence to support the deficiency determination. The Second Circuit held that the evidence was insufficient to support the deficiency determination because respondent did not demonstrate that the taxpayer actually purchased or sold cocaine. The Second Circuit concluded that the notice of deficiency was arbitrary. Llorente is inopposite to petitioner's case. In Llorente, there was no evidence that the taxpayer had actually received anything during the period at issue. Petitioners, in contrast, admit they deposited large amounts of money in bank accounts during the year at issue. In Jackson v. Commissioner, supra, respondent determined that the taxpayer received taxable income from drug trafficking activities. Respondent based his determination solely upon information furnished by an unreliable informant. The Court in Jackson ruled that because respondent's determination was based solely on an unreliable source, *626 the determination was arbitrary and respondent had the burden of going forward with evidence to establish the existence and amount of any deficiency. Jackson v. Commissioner, supra at 401. Jackson also is inopposite to petitioners' case because, in Jackson, respondent's determination was based solely on unreliable information from an informant, whereas in petitioners' case, respondent's determination was fully substantiated by evidence of bank deposits. In Dellacroce v. Commissioner, supra, respondent determined that the taxpayer had unreported income from a labor racketeering payoff. Respondent based his determination, in part, on information from an informant. The Court in Dellacroce, following Llorente, held that the notice of deficiency was arbitrary because it was based entirely on hearsay evidence and that respondent therefore had the burden of going forward with evidence linking the taxpayer to a tax-generating act. Dellacroce v. Commissioner, supra at 287. Dellacroce is distinguishable from the present case because no evidence showed that the taxpayer in Dellacroce had actually received any payment *627 whereas in petitioners' case the evidence shows that petitioners deposited large sums in their bank accounts during the year in issue. Respondent argues that petitioners' case is similar to Tokarski v. Commissioner,87 T.C. 74 (1986). In Tokarski, respondent determined that the taxpayer had unreported income. Respondent based his determination on a deposit to the taxpayer's bank account. The trial record revealed no income-producing activity on the part of the taxpayer. We held that under these circumstances, respondent does not have the burden of going forward with evidence linking the taxpayer to an income-producing activity. Petitioner argues that the holding of Tokarski is inapplicable to petitioners' case because in Tokarski, respondent did not contend the source of the income was illegal. In petitioners' case, respondent introduced evidence that suggests that a possible source of the bank deposits was embezzlement from the Mexican government. Petitioners argue that because respondent introduced evidence suggesting an illegal source of income, the holding of Tokarski does not apply and the holding of Weimerskirch does apply. Petitioners' *628 argument ignores the evidence that petitioners had bank deposits in excess of $ 400,000 during the year at issue. Under Weimerskirch, the burden of going forward with the evidence shifts to respondent if there is no evidence to support the determination. This rule is consistent with Tokarski where we held the burden of going forward did not shift in a situation where there was evidence to support the determination. Since respondent's determination in petitioners' case was substantiated by evidence of bank deposits, we find that the determination was not arbitrary. The holding of Tokarski is therefore applicable. We hold that respondent is not required to produce evidence linking petitioners to an income-producing activity as a precondition to requiring petitioners to meet their burden of proof. Accordingly, we deny petitioners' motion to shift to respondent the burden of going forward with the evidence. Even though respondent did not have the burden of going forward with evidence linking petitioners to an income-producing activity, respondent did introduce evidence concerning petitioner's employment in Mexico and his receipt of funds from various sources. At trial *629 and in a written motion, petitioners objected to the admission into evidence of the deposition of Dr. Jose Manuel Septien, the Director General of DGAMMI. We denied petitioners' motion because Dr. Septien was properly deposed under Rule 81 and petitioners would not be prejudiced by the admission of the deposition. In their written motion objecting to the admission of Dr. Septien's deposition, petitioners specifically objected to the admission of receipts for bank drafts. The bank drafts to which the receipts correspond were introduced into evidence by petitioners. We find that respondent laid a proper foundation for the evidence and that it is admissible. The next question for our consideration is whether petitioners have met their burden of proof. Petitioners admitted that they had $ 3,715.11 of unreported interest income in tax year 1976. Respondent introduced evidence showing that petitioners had bank deposits of at least $ 336,985.42 during tax year 1976. Bank deposits are prima facie evidence of income. Estate of Mason v. Commissioner, supra;Tokarski v. Commissioner, supra.Petitioners' only evidence presented to prove a non-taxable *630 source of these deposits was petitioner's own self-serving testimony. Petitioner testified that the source of the deposits was compensation for family property in Spain which had been seized when the Franco government came to power. We do not find petitioner's testimony to be credible. No competent or authoritative evidence was introduced by petitioner to in any way corroborate his story. We are convinced that petitioner's tale of payment for the alleged taking of his undocumented family property is merely a schematic figment of a fecund imagination. Our conclusion here is confirmed by the change in petitioner's testimony from positive on direct examination to equivocation and evasiveness on cross-examination. We simply are unconvinced by petitioner's testimony. Petitioners sought to introduce into evidence an affidavit supporting their story from Don Luis Enrique Rodriguez. However, we find that the affidavit is inadmissible under Rule 143(b). We will not admit the affidavit under the exception of rule 803(24), Fed. R. Evid., because petitioners have not demonstrated reasonable efforts to obtain the witness's personal testimony. Accordingly, *631 we hold that petitioners have not met their burden of proof and we sustain respondent's determination that petitioners had unreported income of $ 340,700.53 in taxable year 1976. The next issue for our consideration is whether petitioners are liable for additions to tax under sections 6651(a)(1), 6653(a), and 6654(a) for the taxable year 1976. Petitioners bear the burden of proving that they are not liable for these additions to tax. Baldwin v. Commissioner,84 T.C. 859, 871 (1985); Enoch v. Commissioner,57 T.C. 781, 802 (1972). Section 6651(a)(1) imposes an addition to tax for failure to timely file a Federal income tax return. The addition to tax does not apply if the taxpayer establishes that the failure to timely file was due to reasonable cause and not due to willful neglect. Petitioners failed to file Federal income tax returns for the taxable year 1976. Petitioner claims he did not know he was required to file Federal income tax returns for 1976. Petitioner claims his accountant advised him he was not required to file a Federal income tax return for 1976. Petitioners' only evidence presented to prove reasonable cause for petitioner's *632 failure to file is petitioner's own self-serving testimony. As previously noted, we do not find petitioner's testimony to be credible. Consequently, we find petitioners have not met their burden of proving petitioner had reasonable cause for his failure to file a Federal income tax return for 1976. Petitioners offered no evidence concerning Angelina Saavedra's reasons for failing to file a Federal income tax return in 1976. Therefore, we find petitioners have not met their burden of proving Angelina Saavedra had reasonable cause for her failure to file a Federal income tax return for 1976. Accordingly, we sustain the addition to tax under section 6651(a)(1). Section 6653(a) provides for an addition to tax if any part of the underpayment is due to negligence or an intentional disregard of rules or regulations. Under section 6653(a), negligence is a lack of due care or a failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985). Petitioners have failed to introduce any evidence to carry their burden of proof. Consequently, we sustain the addition to tax under section 6653(a). *633 Section 6654 imposes an addition to tax for underpayment of estimated tax. Once a deficiency has been established, section 6654(a) is mandatory unless a taxpayer can bring himself within certain exceptions not here applicable. Grosshandler v. Commissioner,75 T.C. 1, 20-21 (1980). The addition to tax under section 6654(a) is sustained. We have considered petitioners' other arguments and find them to be without merit. To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable year at issue. All rule references are to the Tax Court Rules of Practice an Procedure.↩
2. Respondent conceded that petitioner Eduardo Saavedra was not liable for self-employment tax under sec. 1401 for the taxable year 1976.↩