ALBERT AND VIVIAN CHEESMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cheesman v. Commissioner
Docket No. 17334-88
United States Tax Court
T.C. Memo 1990-350; 1990 Tax Ct. Memo LEXIS 362; 60 T.C.M. (CCH) 96; T.C.M. (RIA) 90350; July 11, 1990, Filed *362 Decision will be entered for the respondent. Albert Cheesman, pro se. Randall B. Pooler, for the respondent. PARR, Judge. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Additions to tax, sections [1]
Year
Deficiency
6653(b)(1)
6653(b)(2)
6661
1984
$ 7,441
$ 3,992 *
$ 1,860
1985
9,486
4,673 *
2,372
*363 After concessions by petitioners regarding Schedule C deductions, the issues for decision are: 1) Whether petitioners had unreported income in the amounts of $ 28,543 and $ 28,492 for the years 1984 and 1985, respectively; and 2) whether petitioners are liable for additions to tax under sections 6653(b)(1), 6653(b)(2), and 6661 for each of the years in issue. Additions to tax for fraud, under section 6653(b), apply solely to petitioner Albert Cheesman. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits are incorporated herein by this reference. Petitioners, who are married, filed joint Federal income tax returns for 1984 and 1985. When they filed their petition, petitioners *364 resided in Bradenton, Florida. In 1984 and 1985, petitioners resided in Arcadia, Florida, along with their two sons, who were approximately 17 to 20 years old. Petitioner Albert Cheesman (Mr. Cheesman) operated a videotape rental business and a pizza restaurant in Arcadia, Florida. In 1985, petitioner Vivian Cheesman (Mrs. Cheesman) opened a video rental business in Bradenton, Florida. Petitioners maintained a cash register in each of the businesses, but did not keep the cash register tape of their daily receipts. No bank accounts were kept for any of the businesses. The only records of the income each business earned was a sheet of paper with daily totals noted. Most of the sales were cash sales, and any checks received by a business were deposited in petitioners' personal checking account. Petitioners did not accept charge cards as payment. For the years in question, petitioners reported income (loss) from the businesses as follows: 1984
1985
Schedule C - Pizza restaurant
$ 5,447
$ (1,218)
Schedule C - Video Arcadia
1,332
10,718 Schedule C - Video Bradenton
- 0 -
4,907 $ 6,779
$ 14,407 The only other source of funds received *365 by petitioners was $ 2,122 in loan proceeds during 1984. No nontaxable or excludable income, gifts, inheritances, or legacies were received during the tax years in question. The parties stipulate that petitioners made the following applications of funds: 1984
1985
Bank Accounts:
First State Bank (increase)
$ 328
$ 264 Florida Federal (increase)
- 0 -
1,318 Inventory:
Pizza restaurant
505
(1,066)
Video - Arcadia
11,946
3,928 Video - Bradenton
- 0 -
16,959 Personal Living Expenses:
Housing - Insurance
172
180 - Electric
1,256
1,273 Food - Groceries
2,340
2,600 Transportation - Insurance
564
564 - Licenses
107
68 Ordinary - Clothing
178
158  - Grooming
30
30  - Other
151
103 Payments - AVCO
1,392
- 0 -  - GMAC
2,100
175  - Finance America
1,140
3,286  - Finance America
1,854
- 0 -  - Mutual
10,892
10,569 $ 34,955
$ 40,409 *366 Petitioners owned their home in Arcadia, Florida, and five cars. The home, more than 50 years old, was described by Mr. Cheesman as a "dump." All the cars were at least 10 years old. Petitioners also owned four pieces of real estate in Indiana. Three of the properties were residential and one commercial. Petitioners did not rent or lease any of the properties in Indiana. Starting in 1987, Revenue Agent Sutherland examined petitioners' income tax returns for 1984 and 1985. Agent Sutherland met with Mr. Cheesman on four separate occasions. To document income, petitioners supplied Agent Sutherland with a sheet of paper listing their purported receipts each day. To document expenses, petitioners gave Agent Sutherland a stack of incomplete invoices. Agent Sutherland determined that petitioners had unreported income in the amount of $ 28,543 in 1984 and $ 28,492 in 1985, by means of an indirect method of proof -- the source and application of funds method. OPINION The first issue for our consideration is whether petitioners understated their taxable income in the amounts determined by respondent during 1984 and 1985. Using the source and application of funds method of *367 reconstructing income, respondent determined that petitioners understated their taxable income for 1984 and 1985. In the absence of adequate books and records it is well established that the Commissioner has the authority to compute the income of a taxpayer by whatever method, in the opinion of the Commissioner, clearly reflects income. Section 446(b); Holland v. United States, 348 U.S. 121 (1954). The source and application of funds method is clearly an acceptable method. Taglianetti v. United States, 398 F.2d 558, 562 (1st Cir. 1968), affd. per curiam on another issue 394 U.S. 316 (1969); Llorente v. Commissioner, 74 T.C. 260, 267 (1980), affd. in part and revd. in part 649 F.2d 152 (2d Cir. 1981); Skirpan v. Commissioner, T.C. Memo. 1983-439. The source and application of funds method is based on the assumption that the amount by which a taxpayer's application of funds during a taxable period exceeds his reported source of funds for that same period has taxable origins. The taxpayer may show the excess application is attributable to such nontaxable items as loans, gifts, or cash on *368 hand at the beginning of the period. Jones v. Commissioner, T.C. Memo. 1983-110. Petitioners do not contest the method used by respondent to recompute their income. Instead they challenge the figures respondent used in arriving at unreported income. Petitioners claim they had a substantial amount of cash on hand during 1984 and 1985 and that in calculating the application of funds respondent overestimated 5 areas; these are (1) $ 130 for the cost of meals out, (2) $ 260 for miscellaneous or other meals, (3) $ 300 for cost of repairs on their house, (4) $ 1300 for automobile gas, and (5) $ 500 for car repairs. Respondent determined the amount of unreported income by estimating petitioners' application of funds. Agent Sutherland talked with Mr. Cheesman about the family's lifestyle and computed totals for each expense. In determining income, Agent Sutherland did not include any figure for beginning cash on hand. Petitioner has the burden of proof to establish a cash hoard existed and the true amount of the living expenses in question. See Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). To disprove respondent's determination, petitioners *369 rely solely on their testimony. This Court is not bound to accept testimony at face value if it is inherently improbable or manifestly unreasonable. Quock Ting v. United States, 140 U.S. 417, 420-421 (1891); Dougherty v. Commissioner, 60 T.C. 917, 932-933 (1973). In the present case, petitioners' testimony is self-serving, uncorroborated, conflicting, and evasive. Accordingly, we conclude that petitioners have failed to meet their burden of proof. Petitioners claim that, in 1972, while living in Indiana, they acquired a substantial cash hoard, which they buried either under their home or in the backyard. Petitioners claim that this cash hoard amounted to about $ 90,000 in 1979 when they moved to Florida. Amazingly, petitioners claim they left the money in the vacant home in Indiana when they moved to Florida. To retrieve the money, petitioners took several trips to Indiana, collecting $ 15,000 - $ 20,000 each time. The last trip occurred in 1986. It seems incredible that a person would leave $ 90,000 in a vacant home when he or she were located hundreds of miles away. It is also hard to understand why a person would not retrieve all the *370 money at one time, especially since it was supposedly kept in a safe-type box that could easily be carried. Several times Mrs. Cheesman refused to answer questions about how and where the cash hoard was kept in Indiana, and in Arcadia, Florida. This might be somewhat understandable if the cash hoard still existed or was in the same location; however, what remains of the supposed cash hoard has been moved to Bradenton, Florida. Furthermore, Mr. Cheesman testified that he and his wife were the only people to know the whereabouts and existence of the cash hoard. Mrs. Cheesman contradicted this statement when she testified that her husband had told one of their sons where the money was buried, and she observed the son take money from the cash hoard. Mr. Cheesman later corrected his testimony to match Mrs. Cheesman's but the son was not used as witness to support this claim. Failure to call the son as a witness to corroborate their testimony gives rise to a presumption that the son's testimony, if given, would have been unfavorable to petitioners' case. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947). *371 Mr. Cheesman also testified that the location of the cash hoard in 1984 and 1985 was stated in his and Mrs. Cheesman's will. Although respondent suggested it, petitioners failed to bring the will to trial as evidence, leaving the conclusion that it did not exist or did not contain the stated information. Regarding the living expenses, petitioners testified they never ate out, drove only two miles a day, did all their own car repairs, and never repaired their home during the two years in question. For a family of four, with five cars, to drive only two miles a day seems remarkable. It is also hard to believe that the two boys never used the cars except to drive to work. Petitioners also testified that they did all their own car repairs. However, in calculating car repair expenses the revenue agent took this into account and included only the cost of parts, not labor. For calculating meals, the revenue agent testified that the Cheesmans had previously stated they ate out occasionally, so a minimal amount of $ 130 was expensed for "meals out". Since the Cheesmans had one son in school an amount of $ 260 was charged for school lunches in the "other meals" category. Petitioners *372 now claim all meals were eaten at home, and these two amounts should not appear in the source and application figure. However, we find this testimony unconvincing. Petitioners also claim they never repaired their house in the two years in question. We find this unbelievable, since the house was described as a "dump." Furthermore, it is inconceivable that a family would live in a house they consider a "dump" if a cash hoard of $ 90,000 were available for repairs. Therefore, for all the reasons stated above, we find petitioners had unreported income of $ 28,543 in 1984 and $ 28,492 in 1985. We next consider whether petitioner Mr. Cheesman is liable for fraud under section 6653(b)(1) and 6653(b)(2). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); Estate of Pittard v. Commissioner, 69 T.C. 391 (1977). Fraud is not to be imputed or presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970); Otsuki v. Commissioner, 53 T.C. 96 (1969). Respondent *373 has the burden of proving that some portion of the underpayment is due to fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). To satisfy his burden of proof, respondent must show two things. First, respondent must prove that an underpayment exists; and second, respondent must show that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Parks v. Commissioner, 94 T.C. (1990); Rowlee v. Commissioner, 80 T.C. 1111 (1983). In proving the first prong of the fraud test, respondent cannot rely on a taxpayer's failure to carry his burden of proof of the nonexistence of a deficiency. Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989); Estate of Beck v. Commissioner, 56 T.C. 297, 363 (1971). Respondent must satisfy his burden of proving the first prong of the fraud test, i.e., an underpayment, when the allegations of fraud are intertwined with unreported and indirectly reconstructed income, in one of two ways. Respondent may prove an underpayment by proving a likely source of the unreported income. Holland v. United States, supra; *374 Nicholas v. Commissioner, 70 T.C. 1057 (1978). Alternatively, where the taxpayer alleges a nontaxable source, respondent may satisfy his burden by disproving the nontaxable source so alleged. United States v. Massei, 355 U.S. 595 (1958); Kramer v. Commissioner , 389 F.2d 236, 239 (7th Cir. 1968), affg. a Memorandum Opinion of this Court. In this case, respondent has shown that a likely source of the unreported income was the three businesses petitioners operated. Petitioners operated these businesses on a cash basis and rarely accepted payment in any form other than cash. Furthermore, adequate records were not maintained to establish the exact amount of income earned by each business. Cash register receipts were discarded and the only record of income kept was a list noting purported receipts for the day. Because of the lack of records, it is very likely the businesses were the source of any unreported income. In disproving the nontaxable sources, respondent must show petitioner's allegation of a cash hoard is false. Respondent may disprove the cash hoard by showing that his reconstruction of income is accurate combined with *375 a showing that petitioner's allegation of a cash hoard is inconsistent, implausible, and not supported by objective evidence in the record. Parks v. Commissioner, supra.
Respondent's reconstruction of petitioners' income using the source and application of funds method was accurate and reliable. Petitioner stipulated to all of the reported sources of income and all of the applications of funds except for 5 small personal living expenses. Furthermore, petitioners' allegation of a nontaxable cash hoard is inconsistent and implausible. Other than petitioners' testimony, the record reveals no evidence that the cash hoard existed. Petitioners' claim to have hoarded the cash for safety reasons, rather than depositing it in a bank, is not credible in light of the fact that petitioners did have other bank accounts. Additionally, one wonders how it is safer to keep the money in a vacant home rather than a bank. Therefore, we conclude that petitioners' claim of a cash hoard is incredible, implausible, and contrary to the objective evidence. Under the second prong of the fraud test, respondent must prove by clear and convincing evidence that petitioner had the requisite fraudulent *376 intent. Parks v. Commissioner, supra. Fraudulent intent may be proven by circumstantial evidence, because direct proof of the taxpayer's intent is rarely available. Rowlee v. Commissioner, supra.The taxpayer's entire course of conduct may be examined to establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, supra at 105-106. The intent to conceal or mislead may be inferred from a pattern of conduct. See Spies v. United States, 317 U.S. 492, 499 (1943). A pattern of consistent underreporting of income, Holland v. United States, supra at 137; the making of false and inconsistent statements to revenue agents, Grosshandler v. Commissioner, 75 T.C. 1, 20 (1980); implausible or inconsistent explanations of behavior, Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986); and failure to maintain complete and accurate books and records all justify the inference of fraud. Parks v. Commissioner, supra; Cerilli v. Commissioner, T.C. Memo 1983-773. In the present *377 case, petitioners failed to maintain adequate books and records. All three businesses were equipped with cash registers that were used. However, petitioners did not keep the cash register tapes. Petitioners would total the registers at the end of each day and note the amount in a notebook, discarding the register tape. The intentional destroying of business documents indicates an intent to conceal income. Schwarzkopf v. Commissioner, 246 F.2d 731, 734 (3d Cir. 1957), affg. a Memorandum Opinion of this Court; Catalanotto v. Commissioner, T.C. Memo. 1984-215. Additionally, petitioners' testimony concerning the cash hoard is inconsistent and unlikely. Several times during the trial they made contradictory statements, and other times they were purposely evasive. In addition, the record contains no documentary or other credible evidence supporting petitioners' claim that the cash hoard existed or when the cash was earned or otherwise obtained. Respondent presented evidence showing that for the past 10 years, 1973 to 1983, petitioners had small amounts of income and paid little or no income tax, and therefore could not have accumulated a $ 90,000 *378 cash hoard. After many requests by respondent, fourteen days before trial petitioner finally named 1972 as the date when the cash hoard was purportedly accumulated. Respondent was thus unable to obtain income tax records for 1972 before trial. Petitioners offered no evidence to corroborate their claim, and we do not believe it. Respondent has satisfied his burden of proving both prongs of the fraud test by clear and convincing evidence. We find petitioner Mr. Cheesman intentionally failed to report taxable income in 1984 and 1985, and he is liable for the additions to tax for fraud. The last issue we must decide is whether petitioners are liable for the addition to tax set forth in section 6661. Section 6661 imposes an addition to tax if there is a substantial understatement of income tax for a taxable year. The amount of such additions assessed after October 21, 1986, is equal to 25 percent of the amount of any underpayment attributable to such understatement. Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498 (1988). A substantial understatement is one which exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. *379 6661(b). If petitioners' understatement of income is substantial within the meaning of section 6661(b), they are liable for the section 6661 addition unless such understatement can be reduced by section 6661(b)(2)(B). Section 6661(b)(2)(B) provides that the understatement shall be reduced by the portion of the understatement which is attributable to (i) the tax treatment of an item if there is or was substantial authority for such treatment, or (ii) the tax treatment of items with respect to which relevant facts are adequately disclosed. By either test of section 6661(b), petitioners' understatements are substantial. Petitioners had no authority for failing to report cash income in 1984 or 1985, nor did they disclose any facts pertaining to such income on their 1984 or 1985 returns or in a statement attached to their returns for the two years. Therefore, the addition to tax cannot be reduced through application of section 6661(b)(2)(B) and petitioners are liable for the section 6661 addition to tax. For the foregoing reasons, Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended, and in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure. * 50 percent of the interest due on the deficiencies.↩