T.C. Memo. 2020-101

UNITED STATES TAX COURT

TAMECCA SERIL, a.k.a. TAMECCA TILLARD, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4491-19.                          Filed July 8, 2020.

Tamecca Seril, a.k.a. Tamecca Tillard, pro se.

<u>Marissa J. Savit</u> and <u>Thomas A. Deamus</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:  The Internal Revenue Service (IRS or respondent) deter-
mined for petitioner's 2016 taxable year a deficiency of $9,191 and an accuracy-
related penalty of $1,838.  The issues remaining for decision are whether petition-
er is:  (1) taxable on distributions from her retirement account, (2) liable under

**[*2]** section 72(t)[1] for the 10% additional tax on early distributions from that account, and (3) liable for an accuracy-related penalty.[2]  We hold that petitioner is taxable on the distributions and that a portion of her distributions is subject to the additional tax.  But we hold that she is not liable for any penalty.

## FINDINGS OF FACT

At trial the parties stipulated a number of exhibits which are incorporated by this reference.  Petitioner resided in New York when she filed her petition.

Petitioner is the mother of two boys, the elder of whom was scheduled to graduate from high school in 2016 and matriculate at Morehouse College (Morehouse) that fall.  During this period petitioner and her family experienced stress.  Petitioner had filed for a divorce, which involved claims of domestic violence and child neglect.  Her elder son had encountered problems at school that threatened his ability to graduate on time.

---

[1]All statutory references are to the Internal Revenue Code (Code) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts are rounded to the nearest dollar.

[2]The IRS determined in the notice of deficiency that petitioner was taxable on a $747 payment she received from the New York State College Choice Tuition Program Trust Fund.  Respondent has conceded that issue, as well as petitioner's liability for any additional tax or accuracy-related penalty with respect to that $747 payment.

**[*3]**  On the basis of a letter from Morehouse, petitioner anticipated that the cost of her son's tuition and living expenses (absent receipt of a scholarship) would be about $54,000 annually.  During 2016 she made two withdrawals totaling $54,500 from her individual retirement account (IRA):  a distribution of $16,500 on January 8 and a distribution of $38,000 on July 25.  She was not age 59-1/2 or older when she received these distributions.  From the latter distribution the brokerage firm withheld Federal income tax of $3,800.  Petitioner did not roll over any portion of these distributions within 60 days.  See sec. 408(d)(3).

During 2016 petitioner also made withdrawals totaling $15,099 from her New York 529 College Savings Program Account (529 account).  Two distributions totaling $5,816 were paid to her.  A third distribution, of $9,283, was made directly to Morehouse.

Petitioner prepared and filed a timely return for 2016.  She reported the entire $54,500 of IRA distributions but reported only $39,500 as being taxable.  She included with her return Form 5329, Additional Taxes on Qualified Plans.  She reported $24,664 of her distributions as being subject to the 10% additional tax and reported additional tax of $2,466.

The IRS' automated underreporter (AUR) unit flagged petitioner's return because of a mismatch between her reported income and the amounts shown on

[*4] the Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., that the brokerage firm had supplied to the IRS. On September 17, 2018, the AUR unit sent petitioner a Notice CP2000 indicating that she (1) had failed to report $15,000 of taxable distributions, (2) had underreported the 10% additional tax due, and (3) was subject to an accuracy-related penalty. The letter instructed her to file a response by October 17, 2018, if she did not agree with these proposed adjustments.

Petitioner did not file a timely response to the Notice CP2000 and, on December 10, 2018, the IRS issued her a notice of deficiency determining the adjustments previously proposed. In January 2019 petitioner sent the IRS a belated response to the Notice CP2000, indicating that she had withdrawn the $54,500 to cover her son's education expenses. She stated that she intended to redeposit $15,000 of that sum (the portion she had not reported), explaining that her $15,099 withdrawal from the 529 account would cover that part of the cost of his education. She requested a waiver of the 60-day rollover period to enable her to redeposit the $15,000 free of tax, urging as justification that she had moved following her divorce and was involved in related litigation. She contended that the $38,000 distribution she had received on July 25 should be exempt from the

[*5] section 72(t) additional tax because she had used that money to pay for her son's expenses at Morehouse.

On March 4, 2019, petitioner filed a timely petition reiterating the contentions advanced in her response to the Notice CP2000. She also contended that the $3,800 withheld by the brokerage firm from her July 25 distribution should be refunded because she had spent the $38,000 on qualified education expenses.

On January 7, 2019, petitioner wrote the brokerage firm that holds her IRA, representing that she intended to apply for a waiver of the 60-day rollover requirement on the ground that a postal error occurred. The firm responded that she would need to provide substantiation of a postal error. She did not provide that substantiation to the firm or to the Court at trial.

Trial was held on January 14, 2020, in New York City. At trial petitioner submitted evidence that her son had qualified to receive Federal education loans and Pell grants up to approximately $24,000 per semester. Petitioner testified that she declined to take any loans, resolving to pay the tuition herself. She produced bank statements establishing payments of $9,809 to Morehouse during 2016; this sum was in addition to the $9,283 distributed directly to Morehouse from her 529 account.

**[\*6]**   At the close of trial the Court instructed the parties to file seriatim briefs. Respondent filed his opening brief on March 27, 2020.  Petitioner filed on April 27, 2020, as her answering brief, a document indicating that she had made a $15,000 deposit into her IRA account that day.

OPINION

A.    Taxability of Retirement Account Distributions

The Commissioner's determination of tax liability is generally presumed correct.  See Rule 142(a).  For the presumption to attach in a case of unreported income, "the evidence of record must at least link the taxpayer with some tax-generating acts."  Llorente v. Commissioner, 649 F.2d 152, 156 (2d Cir. 1981), aff'g in part, rev'g in part 74 T.C. 260 (1980).  "Once the Commissioner makes the required threshold showing, the burden shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary or erroneous."  Walquist v. Commissioner, 152 T.C. 61, 67-68 (2019) (citing Helvering v. Taylor, 293 U.S. 507, 515 (1935)); Tokarski v. Commissioner, 87 T.C. 74 (1986).

Petitioner reported on her 2016 return that she had received distributions of $54,500 from her IRA.  Respondent has thus met his threshold showing.  The burden accordingly shifts to petitioner to show that the distributions were not subject

**[\*7]** to tax. Petitioner does not contend that the burden of proof shifts to respondent under section 7491(a) as to any issue of fact.

Section 61(a) provides that "gross income means all income from whatever source derived." Section 408(d)(1) provides that, "[e]xcept as otherwise provided in this subsection, any amount paid or distributed out of an individual retirement plan shall be included in gross income by the payee or distributee." Section 408(d) provides several exceptions to this rule--e.g., for rollover contributions, transfers incident to divorce, and distributions for charitable purposes. See sec. 408(d)(3), (6), (8).[3]

For a distribution to be excluded from gross income under the rollover exception, the funds must generally be deposited into an eligible retirement account no later than 60 days after the taxpayer receives the distribution. Sec. 408(d)(3)(A). The Secretary may waive the 60-day requirement "where the failure to waive such requirement would be against equity or good conscience, including casualty, disaster, or other events beyond the reasonable control of the * * * [taxpayer]." Sec. 408(d)(3)(I). In determining whether waiver is appropriate, the IRS considers all relevant factors including:

---

[3]Petitioner does not contend that any of her contributions to her IRA account were not deductible on contribution and not taxable on distribution. See sec. 408A(c) and (d).

**[*8]** (1) errors committed by a financial institution * * *; (2) inability to complete a rollover due to death, disability, hospitalization, incarceration, restrictions imposed by a foreign country or postal error; (3) the use of the amount distributed (for example, in the case of payment by check, whether the check was cashed); and (4) the time elapsed since the distribution occurred.  [Rev. Proc. 2003-16, sec. 3.01, 2003-1 C.B. 359, modified by Rev. Proc. 2016-47, 2017 I.R.B. 346.]

This Court has applied the same factors in determining whether it would be against equity or good conscience to deny a waiver.  See Trimmer v. Commissioner, 148 T.C. 334, 363 (2017) (addressing analogous hardship waiver under section 402(c)(3)(B)).

Applying these factors, we do not believe the IRS erred in declining to waive the 60-day rollover requirement.  Petitioner has not alleged any error by a financial institution that prevented her from effecting a timely rollover.  She did not substantiate her contention that a postal error caused the delay, and she has alleged no disability or the like as a contributing cause.  While she contends that it was always her intention to roll over the $15,000, she produced no evidence that she set the money aside (e.g., in a separate account) for that purpose.  Cf. ibid. (finding that taxpayers had not used or profited from the distributed funds while holding them for rollover).  Petitioner produced no evidence to establish what she did with the funds or how she used them.

**[*9]** Finally, we find it important that nearly four years elapsed between petitioner's receipt of the final distribution and her redeposit of the $15,000 to her IRA. Petitioner does not appear to have made any effort to roll over the funds before the notice of deficiency was issued to her. See Rev. Proc. 2016-47, sec. 3.02(3), 2016-37 I.R.B. 346, 347 (requiring self-certification that the rollover contribution was made "as soon as practicable" after the obstacle preventing the rollover was removed). Under these facts, declining to waive the 60-day requirement is not against equity or good conscience, and petitioner is therefore taxable on the full $54,500 that was distributed to her.

B.     Section 72(t) Additional Tax

Where (as here) a taxpayer receives distributions from a qualified retirement plan, section 72(t)(1) generally provides that the tax shall be increased "by an amount equal to 10 percent of the portion of such amount which is includible in gross income." There are several exceptions to this rule, e.g., where the taxpayer receiving the distribution has attained the age of 59-1/2 or is disabled. See sec. 72(t)(2)(A)(i), (iii). Petitioner qualifies for neither of these exceptions.

Another exception applies "to the extent such distributions do not exceed the qualified higher education expenses * * * of the taxpayer for the taxable year." Sec. 72(t)(2)(E). "Qualified higher education expenses" include expenses for

[*10] tuition, fees, books, supplies, and (to some degree) room and board, and include expenses that a taxpayer incurs on behalf of a child. See secs. 72(t)(7), 529(e)(3). In order to qualify, educational expenses must be incurred in the taxable year in which the distribution is received. See Duronio v. Commissioner, T.C. Memo. 2007-90; Lodder-Beckert v. Commissioner, T.C. Memo. 2005-162. Petitioner relies on this exception and has the burden of production with respect to that issue. See El v. Commissioner, 144 T.C. 140, 148 (2015).

Petitioner asserted in her response to the Notice CP2000 that the total yearly cost of her son's attendance at Morehouse was $54,000. But she presented no evidence that she actually incurred expenses of that magnitude. Morehouse appears to have provided that figure as an estimate of the cost of attendance before any grant or scholarship was applied. And that figure reflected the estimated cost of full-year attendance, whereas the relevant figure here is the amount petitioner actually paid during calendar 2016.

On her return petitioner reported that $24,660 of her distributions was subject to the 10% additional tax under section 72(t). By negative implication this suggests that the expenses she believed to be exempt from the 10% additional tax totaled $29,840 ($54,500 – $24,660). But she was not able to substantiate educational costs or payments that large during 2016.

[*11] Petitioner substantiated that she paid Morehouse $19,092 during 2016, consisting of $9,283 distributed to Morehouse from her 529 account and $9,809 in payments separately documented by her bank statements. We find that $5,816 of the latter sum represented the balance of her withdrawals from the section 529 account (viz., the portion distributed to her rather than to Morehouse). This leaves $3,993 (viz., $9,809 – $5,816) as the amount that petitioner paid Morehouse using proceeds of her IRA withdrawals.

In sum, we find that $3,993 of the $54,500 that petitioner withdrew from her IRA account was used during 2016 for "qualified higher education expenses" within the meaning of section 72(t)(2)(E). We find that she has failed to meet her burden to show that any exception applies to the balance of her IRA withdrawals. She is thus liable for additional tax of $5,051 (10% × $50,507) under section 72(t).

C.    Accuracy-Related Penalty

The Code imposes a 20% penalty upon the portion of any underpayment of tax that is attributable to (among other things) "[a]ny substantial understatement of income tax." Sec. 6662(a), (b)(2). An understatement of income tax is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. Sec. 6662(d)(1)(A). Section 7491(c) generally provides that "the

[*12] Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty."[4]

Section 6664(c)(1) provides that no accuracy-related penalty shall be imposed with respect to any portion of an underpayment "if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to * * * [it]." The taxpayer bears the burden of showing reasonable cause and good faith. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). The decision whether a taxpayer has met this burden is made on a case-by-case basis, taking into account all pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. Circumstances that may signal reasonable cause and good faith "include an honest misunderstanding of fact or law that is reasonable in light of all

---

[4]The Commissioner's burden of production includes showing compliance with section 6751(b)(1), which requires that the initial determination of any penalty assessment be "personally approved (in writing) by the immediate supervisor of the individual making such determination." This requirement does not apply to any penalty "automatically calculated through electronic means." Sec. 6751(b)(2)(B). This Court has held that substantial understatement penalties determined by an IRS computer program without human review are "automatically calculated through electronic means" and are thus exempt from the written supervisory approval requirement. See Walquist v. Commissioner, 152 T.C. 61, 73 (2019). Although the penalty in Walquist was calculated by the IRS' Correspondence Examination Automated Support program, respondent contends that the same result should follow where (as here) the penalty is calculated by the AUR program. Since we hold on the merits that petitioner is not liable for any penalty, we need not decide whether respondent has met his burden of production.

**[\*13]** of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Ibid.

Petitioner prepared her 2016 return during a very tumultuous time in her life. We found credible her testimony that she attempted to report her tax liability correctly. She reported the full amount of the IRA distributions she received ($54,500), but treated $15,000 as nontaxable because she intended to roll over that amount. She reported $24,660 of her distributions as subject to the 10% additional tax, correctly believing that she was entitled to some exemption for qualified education expenses. Although she did not calculate the exemption amount correctly, we find that she exercised good faith in her reporting. Considering all these facts, we find that petitioner has demonstrated reasonable cause for her underpayment.

To reflect the foregoing,

Decision will be entered under Rule 155.