EDDIE and EDNA BEASLEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Beasley v. Commissioner
Docket No. 29542-82.
United States Tax Court
T.C. Memo 1987-316; 1987 Tax Ct. Memo LEXIS 316; 53 T.C.M. (CCH) 1237; T.C.M. (RIA) 87316; June 25, 1987. Towner Leeper and David Leeper, for the petitioners. Byron Calderon, for respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: In a deficiency notice dated October 14, 1982, respondent determined a deficiency in petitioners' income tax for 1977 of $35,923.52 and an addition to tax under section 6653(b) [1] of $17,961.76. After concessions, including *317 the addition to tax under section 6653(b) by respondent and the timeliness of the deficiency notice by petitioner, the only issues remaining for decision are: (1) whether respondent has the burden of going forward with the evidence because the notice of deficiency was arbitrary or without foundation; (2) whether petitioners had unreported taxable income as determined by respondent; and (3) whether petitioner Edna Beasley is entitled to relief as an "innocent spouse" under section 6013(e). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits associated therewith are incorporated herein by reference. Petitioners, Eddie Beasley (Eddie) and Edna Beasley (Edna), husband and wife, filed a joint income tax return for 1977 on the cash basis on August 17, 1978. They resided in New Mexico during 1977 and at the time they filed their petition. During 1977 Eddie was the president, *318 only employee, and sole shareholder of Paloma Air, Inc., ("Paloma"), a New Mexico corporation which was in the business of selling aircraft and avionics. The corporation had a checking account at the First National Bank of Las Cruces. Both petitioners were authorized to write checks on the corporate account. Petitioners had an individual checking account at the same bank, in which they usually deposited Eddie's salary checks from Paloma. During 1977, both petitioners were engaged to some extent in the operation of a family business called L.E.E. Quarter Horse Farm (the "horse farm") in which they bred and raised quarter horses for racing. Petitioners lived on the horse farm and maintained a separate checking account at the same bank under the farm's name. During 1977 petitioners acquired the following horses as part of the quarter horse business: Names
Month Acquired
Purchase Price
Joyful Joyce
January $1,000
Mis Par None
July    4,000
Bar Deck Charger
July    8,500
Hey Chargette
August  27,000
Moon God
August  15,500
The Fentress
December
1,900
Fixit Free
December
1,500
Candy Pants
December
7,000
Charge Tiny Rocket
December
14,500
*319 In 1977 they also bought a horse named "My Joe Bid" for their daughter's personal use at a cost of $3,500. Three of the above horses were purchased with checks and the remainder with cash. In July 1982 Eddie was indicted in the United States District Court for the Northern District of Oklahoma for conspiring during the period from May 1977 to April 1982 to possess and distribute marijuana and cocaine in violation of sections 841 and 846 of Title 21 of the United States Code. He was subsequently convicted and sentenced to serve thirteen years in prison and to pay a fine of $20,000. He did not comply with the sentence and did not appear at the trial of this case because he was still a fugitive from justice. On their joint return for 1977, petitioners reported the following items of income: Wages
$18,000
State Income Tax Refund
205
Sale of Assets
2,455
Sale of Hay
1,130
Other Income
64,087
Total
$85,877
The return was prepared by Donald E. Shumate, a certified public accountant, who made an analysis of petitioners' 1977 bank deposits using a journal provided by Mr. Beasley. Neither the journal nor petitioners' original bank records such as monthly *320 statements, deposit slips, and cancelled checks were available at the trial. Petitioners' return for 1977 was audited by Larry Rivera, one of respondent's agents. Rivera reconstructed petitioners' income by use of an indirect method called "bank deposits plus undeposited currency expenditures." Using this method, the agent concluded that during 1977 petitioners had unreported taxable receipts of $69,999.18 determined as follows: Bank Deposits: Horse Farm Bank Account
$21,274.88
Individual Bank Account
86,832.59
Total Deposits
108,107.47
Less Non-Taxable Deposits
17,910.49
Total Taxable Bank Deposits
90,196.98
Plus Cash Expenditures: Horse Purchases
60,000.00
Loan Payment to Paloma
2,000.00
Withholdings on W-2
3,591.45
Other Amounts Withheld
87.75
Total Taxable Income
155,876.18
Less Gross Receipts Reported
85,877.00
Unreported Taxable Receipts
69,999.18
Rivera computed the bank deposits, taxable and non-taxable, from the records of First National Bank on petitioner's bank accounts and from the analysis prepared by Shumate. The cash expenditures for horses were computed by Rivera from petitioners' 1977 depreciation schedule and from other *321 information provided by Ginita Wall, one of petitioners' former representatives. The cash expenditures for the loan repayment to Paloma and the amounts withheld from wages were based on documents provided by petitioners or their representatives. In connection with his determination of the source of the funds for the cash expenditures, Rivera asked Eddie if he had any cash on hand as of December 31, 1976, and failed to receive a response. Rivera was also unable to verify from the bank records that any cash withdrawals from the documents were used to purchase horses. Consequently, Rivera concluded that all cash expenditures including those for the purchase of horses were made from undeposited income earned in 1977. OPINION Burden of going forward with the evidence
As a general rule a petitioner in this Court has the burden of going forward with the evidence as well as the ultimate burden of persuasion that the deficiency determined by the Commissioner in the statutory notice is incorrect. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). However, a showing by petitioner that the statutory notice is arbitrarily excessive or without foundation shifts *322 the burden of going forward with the evidence to respondent. Helvering v. Taylor,290 U.S. 507, (1935); Llorente v. Commissioner,74 T.C. 260 (1980), affd. in part and revd. in part 649 F.2d 152 (2d Cir. 1981). Petitioners contend that the notice in this case was arbitrary on several grounds. For the reasons set forth below, we disagree. First, petitioners argue that the notice was arbitrary because respondent's agent failed to determine how much cash petitioners had on hand as of the beginning of 1977. On the record before us this argument has no merit because we have found that Rivera specifically asked Eddie about the amount of cash as of December 31, 1976 and received no response. Petitioners next contend that Rivera erroneously failed to consider that some of the horse purchases could have been made with deposited currency, i.e., with funds from checks drawn to cash. Here again, petitioners' argument is contrary to the facts before us because we have found that Rivera did look for bank withdrawals contemporaneous with and in amounts similar to horse purchases, but was unable to identify any such withdrawals which were used *323 for horse purchases. Consequently this argument also fails. We have considered but find unpersuasive petitioners other contentions on this issue including his argument that respondent failed to establish a likely source of the unreported income. On this record we cannot conclude that it was arbitrary for respondent to assume, as he did, that the unreported funds came from Mr. Beasley's involvement in the drug business. See Llorente v. Commissioner,74 T.C. at 266. From all of the foregoing, we conclude that respondent's notice of deficiency was not arbitrary or without foundation, and consequently the notice is entitled to its usual presumption of correctness. Deficiency
Since we have concluded above that respondent's notice of deficiency is entitled to its usual presumption of correctness, petitioners have the burden of overcoming that presumption with proof of any error which occurs in respondent's determination. They have failed to do so, however, because the record contains no evidence from which we can reasonably conclude that respondent's determination of the deficiency is in error in any respect. Innocent Spouse
Edna contends that she *324 is entitled to relief as an "innocent spouse" under section 6013(e). To qualify for such relief she has the burden of proving that: (1) a joint return for 1977 was made on which there was a substantial understatement of tax attributable to grossly erroneous items of Eddie; (2) in signing the return, Edna did not know of, and had no reason to know of, the substantial understatement, and (3) taking into consideration all facts and circumstances, it is inequitable to hold her liable for the tax attributable to the substantial understatement. Although Edna satisfies the first requirement, she has failed to satisfy the remaining two. To begin with, we are convinced that she knew or reasonably should have known of the substantial understatement. She was obviously aware of how much money was being spent during the year on the horses and she participated in maintaining all three bank accounts. Moreover, we are unable to conclude that any substantial amount of funds or of business activities were hidden from her. In sum, we are not convinced of the validity of her pleas of ignorance. Furthermore, we are not satisfied that it would be inequitable to hold her liable for the deficiencies *325 attributable to the omissions. See Adams v. Commissioner,60 T.C. 300, 303-304 (1973). From the record as a whole it is apparent that the omitted receipts were either deposited in one of the bank accounts, over which she had control, or used to pay expenses of the horse farm, with which she was involved. We, therefore, conclude that she is not entitled to relief under section 6013(e). Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided.↩