# United States Tax Court

T.C. Memo. 2024-23

DONALD ECRET AND KRISTEN ECRET,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 5238-22.                    Filed February 14, 2024.

————————

Donald Ecret and Kristen Ecret, pro sese.

*Frank A. DiPietro*, *Gennady Zilberman*, and *Francesca Chou*, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, *Judge*: With respect to petitioners' Federal income tax for 2019, the Internal Revenue Service (IRS or respondent) determined a deficiency of $6,859 and an accuracy-related penalty under section 6662(a).[1] The deficiency stems largely from a determination that petitioners underreported their taxable Social Security benefits. After concessions, the sole question remaining for decision is whether petitioner wife is properly treated as having received $19,866 of Social Security benefits in 2019 by virtue of section 86(d)(3), the so-called workers'

———————————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. We round monetary amounts to the nearest dollar.

[*2] compensation offset provision.[2] We answer this question in the affirmative.

## FINDINGS OF FACT

The following facts are derived from the pleadings, the trial testimony, and documents stipulated by the parties or otherwise admitted into evidence. Petitioners resided in New York when they timely petitioned this Court.

Petitioner wife worked as a registered nurse until 2014. In that year she suffered an injury and became medically disabled. She began receiving New York workers' compensation benefits in 2014. She received approximately $42,000 of such benefits annually through 2019, the tax year at issue. The record does not enable us to determine the exact amount she received each year.

In 2015 petitioner wife applied to the Social Security Administration (SSA) for benefits related to her disability. In December 2017 the SSA issued her an award letter indicating that she was entitled to benefits beginning in 2015. In January 2018 she was issued a Form SSA–1099, Social Security Benefit Statement, for 2017, reporting that she had $14,392 of Social Security benefits for that year. But a Federal statute, 42 U.S.C. § 424a(a), limits the total combined amount of workers' compensation and Social Security benefits that an individual may receive in a given year. *See Richardson v. Belcher*, 404 U.S. 78, 82–84 (1971) (describing the policy rationale for this statute). The SSA concluded that petitioner wife was over that statutory limit for 2017, and it thus disbursed no benefits to her. The Form SSA–1099 explained that the entirety of her 2017 Social Security benefits was subject to "workers' compensation offset."

In January 2018 petitioner wife filed with the SSA a request for reconsideration, asking that it recalculate her workers' compensation offset amount. In January 2019 the SSA issued her a letter granting relief. The SSA acknowledged that, in its initial award letter, it had miscalculated her monthly "average current earnings" (ACE). ACE

---

[2] At trial petitioners conceded that they received during 2019 unreported taxable interest and dividend income of $33 and $38, respectively. In his post-trial brief respondent "concedes, for the purposes of this case," that the total amount of Social Security benefits properly treated as having been received by petitioner wife is only $19,866 for the tax year at issue, rather than $55,248 as determined in the notice of deficiency. Respondent has also conceded the accuracy-related penalty.

[*3] serves as a benchmark to approximate the monthly earnings an individual would have received if not disabled, and the SSA calculates the workers' compensation offset using a figure equal to 80% of ACE. *See* 42 U.S.C. § 424a(a). The SSA informed petitioner wife that, effective January 2018, her ACE was adjusted upward to $5,074 to reflect a rise in the national earnings level. As a result, 80% of her ACE was increased to $4,059. The SSA noted that it had paid her $3,060 on December 4, 2018, to account for this adjustment.

Petitioner wife received Form SSA–1099 for 2018. It indicated that she had total Social Security benefits of $71,918, of which $19,322 was attributable to 2018. The balance, or $52,596, reflected retroactive benefits attributable to 2015–2017. The Form SSA–1099 indicated that $20,749 had been paid to her "by check or direct deposit." Another $5,375 was paid as attorney's fees and as voluntary Federal income tax withholding. The balance of the $71,918 in benefits, or $45,794, was not paid on account of the "workers' compensation offset."[3]

Petitioner wife received Form SSA–1099 for 2019, the tax year at issue. It indicated that she had total Social Security benefits of $55,248, of which $19,866 was attributable to 2019. The balance, or $35,382, reflected retroactive benefits attributable to 2016–2018. The Form SSA–1099 indicated that $6,120 was paid to her "by check or direct deposit." Another $1,080 was paid as voluntary Federal income tax withholding. The balance of the $55,248 in benefits, or $48,048, was not paid on account of the "workers' compensation offset."

On their joint Federal income tax return for 2019 petitioners reported $5,202 in taxable Social Security benefits. They appear to have calculated this sum as 85% of the $6,120 cash payment from the SSA. *See* § 86(a)(2)(B) (specifying "85 percent of the social security benefits received during the taxable year" as the maximum amount includible in gross income).

The IRS selected petitioners' 2019 return for examination. It determined that, under section 86(d)(3), the base for calculation of their taxable Social Security benefits should be increased by $49,128, representing the sum of $1,080 (the amount paid by the SSA as voluntary income tax withholding) and $48,048 (the amount of Social Security

---

[3] Petitioner wife contacted the SSA with questions about the Form SSA–1099 for 2018. By letter dated March 29, 2019, the SSA replied that "Ms. Ecret's 2018 [Form] 1099 is correct." It noted that "there were no SSA benefits released prior to 2018" and explained the math underlying the workers' compensation offset.

[*4] benefits not paid on account of workers' compensation offset). On November 22, 2021, the IRS issued petitioners a timely notice of deficiency for 2019, upwardly adjusting their gross income by $41,759 ($49,128 × .85) to reflect additional taxable Social Security benefits. Petitioners petitioned this Court for redetermination.[4]

Following the trial respondent filed an Opening Brief and petitioners filed an Answering Brief. In his Brief respondent "concedes, for the purposes of this case," that petitioners are not liable for income tax in 2019 on the portion of petitioner wife's Social Security benefits that constituted a retroactive payment attributable to 2016–2018. But he maintains that, under section 86(d)(3), petitioner wife should be treated as having received in 2019 total Social Security benefits of $19,866, representing the sum of $6,120 (the cash payment from the SSA), $1,080 (the amount paid by the SSA as voluntary income tax withholding), and $12,666 (the amount of 2019 Social Security benefits not paid on account of workers' compensation offset). Respondent contends that 85% of this sum, or $16,886, is properly includible in their gross income for 2019. Petitioners contend that they should be taxable only on the Social Security benefits that were paid to them in cash.

## OPINION

### I.    *Burden of Proof*

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving them erroneous. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). In certain circumstances section 7491 may shift the burden of proof to the Commissioner. But that section applies only if the taxpayer (among other things) "introduces credible evidence with respect to any factual issue relevant to ascertaining the [taxpayer's] liability." § 7491(a)(1). The question presented—whether petitioner wife is treated as having received Social Security benefits that were offset by

---

[4] The IRS also selected petitioners' 2018 return for examination, and it timely issued them, on August 9, 2021, a separate notice of deficiency for that year. Petitioners disputed the deficiencies for both years in the Petition they filed on February 22, 2022. But while their Petition was timely with respect to the notice for 2019, it was filed 108 days late with respect to the notice for 2018. *See* § 6213(a) (requiring that a petition be filed within 90 days of the issuance of the notice of deficiency); *Sanders v. Commissioner*, No. 15143-22, 161 T.C., slip op. at 2–3 (Nov. 2, 2023). We accordingly dismissed this case for lack of jurisdiction insofar as it concerned petitioners' tax liability for 2018.

[*5] workers' compensation payments—is essentially a legal one, and no facts relevant to ascertaining petitioners' liability are in dispute. Thus, section 7491 does not operate to shift the burden of proof to respondent.

## II.    *Unreported Income*

Section 61(a) provides that "gross income means all income from whatever source derived." Generally, gross income does not include workers' compensation. § 104(a)(1). But Social Security benefits are included in gross income to the extent specified by section 86.

In cases of unreported income, the Commissioner must establish an evidentiary foundation connecting the taxpayer to the income-producing activity or demonstrate that the taxpayer actually received the income. *See Llorente v. Commissioner*, 649 F.2d 152, 156 (2d Cir. 1981), *aff'g in part, rev'g in part* 74 T.C. 260 (1980). "Once the Commissioner makes the required threshold showing, the burden shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary or erroneous." *Walquist v. Commissioner*, 152 T.C. 61, 67–68 (2019). But the IRS may not rely solely on a third-party report of income if the taxpayer raises a reasonable dispute concerning the accuracy of the report. *See* § 6201(d).

Respondent met his threshold burden here by supplying a 2019 Form 1099–SSA indicating that petitioner wife was entitled to $55,248 in Social Security benefits, of which $6,120 was paid in cash, $1,080 was paid as voluntary income tax withholding, and $48,048 was offset by workers' compensation. Respondent may rely on this third-party report of income because petitioners have not raised a reasonable dispute concerning the accuracy of the amounts appearing on it. *See Hardy v. Commissioner*, 181 F.3d 1002, 1004–05 (9th Cir. 1999), *aff'g* T.C. Memo. 1997-97.

## III.    *Workers' Compensation Offset*

Federal law limits the amount of combined workers' compensation and Social Security benefits that an individual may receive in a given year. As a general rule, an individual may not receive combined benefits that exceed 80% of his or her ACE benchmark. *See* 42 U.S.C. § 424a(a). When payment of Social Security benefits would cause the individual's combined benefits to exceed 80% of ACE, the SSA must stop disbursing benefits. The undisbursed benefits are thus said to be offset by the workers' compensation payments.

**[\*6]**    Section 86(a)(1) provides that, to the extent of the specified inclusion ratio, "gross income . . . includes social security benefits," a term defined in section 86(d).  In general, "social security benefit" is defined to include "any amount received by the taxpayer by reason of entitlement to . . . a monthly benefit under title II of the Social Security Act." § 86(d)(1)(A).  That general definition is modified by section 86(d)(3), captioned: "Workmen's compensation benefits substituted for social security benefits."  It provides in relevant part:

> For purposes of this section, if, by reason of section 224 of the Social Security Act [i.e., 42 U.S.C. § 424a] . . . any social security benefit is reduced by reason of the receipt of a benefit under a workmen's compensation act, the term 'social security benefit' includes that portion of such benefit received under the workmen's compensation act which equals such reduction.

Thus, the amount of an individual's Social Security benefits for section 86(d) purposes includes workers' compensation payments to the extent those payments offset Social Security benefits to which the individual is entitled.  *See Moore v. Commissioner*, T.C. Memo. 2012-249, 104 T.C.M. (CCH) 245, 246; *Mikalonis v. Commissioner*, T.C. Memo. 2000-281, 80 T.C.M. (CCH) 330, 332; *see also* H.R. Rep. No. 98-25, at 26 (1983), *reprinted in* 1983 U.S.C.C.A.N. 219, 244 (indicating that Congress specifically anticipated this result). In enacting section 86(d)(3), Congress apparently sought to equalize the treatment of taxpayers in petitioners' position with taxpayers residing in "reverse offset" jurisdictions, i.e., States where the receipt of Social Security benefits reduces workers' compensation benefits.  *See* Charles T. Hall, *Social Security Disability Practice* § 5:19 (2023).

In 2019 petitioner wife received roughly $42,000 in workers' compensation benefits from New York and had $55,248 of Social Security benefits.  As the SSA indicated in its January 2019 letter, 80% of her monthly ACE was $4,059.  On an annual basis, therefore, her combined workers' compensation and Social Security benefits were not permitted to exceed $48,708 ($4,059 × 12).  *See* 42 U.S.C. § 424a(a).  But the sum of the two streams of benefits substantially exceeded this threshold.

In consequence, the bulk of the Social Security benefits to which petitioner wife was entitled for 2019 were subject to workers' compensation offset.  Respondent "concedes, for the purposes of this case," that petitioners are not liable for income tax for 2019 on any portion of the

[*7] Social Security benefits attributable to tax years 2016–2018. But he contends that, under section 86(d)(3), petitioner wife must be treated as having received $19,866 in Social Security benefits for 2019. This amount includes that portion of petitioner wife's workers' compensation payments, or $12,666, that offset Social Security benefits to which she was entitled for 2019. Petitioners disagree, contending that they should be taxed only on the cash payment from the SSA.

Section 86(d)(3) compels us to agree with respondent. Petitioner wife had $19,866 in Social Security benefits attributable to 2019. Of this amount the SSA disbursed $6,120 to her as a cash payment after withholding $1,080 of Federal income tax, which it paid to the IRS on her behalf. The SSA did not disburse the remaining $12,666 on account of the workers' compensation offset. But under section 86(d) petitioners are nonetheless required to treat this sum as Social Security benefits for Federal income tax purposes.

Section 86 provides that up to 85% of Social Security benefits are included in gross income, with the exact percentage depending on various income thresholds. *See* § 86(a)–(c). Respondent contends that the 85% inclusion ratio applies here, and petitioners do not appear to disagree. Indeed, on their 2019 return, they reported $6,120 in Social Security benefits and included 85% of those benefits (or $5,202) in their gross income.

Applying the 85% inclusion ratio, we conclude that petitioners for 2019 have taxable Social Security benefits of $16,886, viz, 85% of the $19,866 in benefits that were attributable to 2019. Because petitioners on their 2019 return reported only $5,202 in taxable Social Security benefits, they must include an additional $11,684 of such benefits ($16,886 − $5,202) in their gross income.

To reflect the foregoing,

*Decision will be entered under Rule 155.*